STATE of Iowa, Appellee,

v.

Daniel M. DICKERSON and Douglas S. Siebrecht, Appellants.

Nos. 66331, 66347.

Supreme Court of Iowa.

Dec. 23, 1981.

Thomas H. Treinen, Battle Creek, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Corwin R. Ritchie, Buena Vista County Atty., for appellee.

. Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

McCORMICK, Justice.

Defendants Daniel M. Dickerson and Douglas S. Siebrecht were convicted by jury and sentenced for two offenses of second-degree burglary in violation of sections 713.1 and 713.3, The Code. Defendants were jointly tried for the offenses in two separate cases. No. 66331 involves the alleged burglary of the Sulpher Springs Feed and Grain, Inc. on May 6, 1979. No. 66347 involves the alleged burglary of a machine shed on the Demers farm in Buena Vista County. For convenience we will refer to them as the Sulpher Springs and Demers cases. We consolidated defendants' appeals for submission purposes. Each appeal involves issues concerning speedy indictment, speedy trial and corroboration of accomplice testimony. In addition, the Demers appeal involves a search and seizure question. We affirm both convictions in the Sulpher Springs case. We affirm Siebrecht's conviction and reverse Dickerson's conviction in the Demers case.

I. *The speedy indictment issue.* Siebrecht was arrested for both offenses on December 7, 1979, and Dickerson was arrested for both of them the next day. Trial informations were filed on the charges on February 6, 1980. Defendants filed motions to dismiss in which they alleged the State violated Iowa R.Crim.P. 27(2)(a) by failing to indict or inform against them within 45 days. The trial court overruled their motions on the ground that the State met its burden to show good cause for the delay. Defendants contend this ruling was erroneous.

The record shows that almost all of the delay was caused by defense counsel's desire to put off a decision relating to possible waiver of preliminary hearing. Plea discussions were also being conducted during this period.

Our standard of review is delineated in *State v. Brandt*, 253 N.W.2d 253, 256 (Iowa 1977). The good cause inquiry focuses on the reason for the delay. *See State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980). In the present cases, the delay was largely attributable to the State's effort to accommodate defense counsel's wish to postpone a decision concerning preliminary hearings and to the parties' common interest in plea negotiations. *Cf. State v. LaMar*, 224 N.W.2d 252, 254 (Iowa 1974) (plea negotia-

tions can constitute good cause for delay in trial).

In these circumstances, the trial court did not abuse its discretion in finding the State met its burden to establish good cause. The court did not err in overruling defendants' motions to dismiss.

■ II. *The speedy trial issue.* Defendants contend the trial court also erred in overruling their motions to dismiss based on the State's alleged failure to bring the cases to trial within one year of initial arraignment as required by Iowa R.Crim.P. 27(2)(c). This contention rests on interpreting "initial arraignment" in the rule to mean the defendants' initial appearance before a magistrate after their arrest. We resolved this issue contrary to defendants' contention in *State v. Hempton,* 310 N.W.2d 206, 207–08 (Iowa 1981). Initial arraignment means the arraignment in district court after indictment or filing of a trial information. *Id.* Defendants were tried within one year of that date.

The trial court did not err in overruling defendants' motions to dismiss based on rule 27(2)(c).

III. *The corroboration issue.* Under Iowa R. Crim.P. 20(3), "[a] conviction cannot be had upon the testimony of an accomplice or a solicited person unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense . . ." Defendants contend they were convicted in each case on the uncorroborated testimony of accomplices.

■ We do not reach the merits of this contention in the Sulpher Springs case because defendants did not urge it in the trial court. A party cannot effectively challenge the sufficiency of the evidence for the first time on appeal. *State v. Leonard,* 243 N.W.2d 887, 893 (Iowa 1976). This situation is not affected by the trial court's right under Iowa R. Crim.P. 18(10) to order acquittal on its own motion. *Cf. State v. Rouse,* 290 N.W.2d 911, 914 (Iowa 1980) (duty of court to instruct on lesser included offenses does not relieve counsel of responsibility to preserve error). We do not inti-

mate what our view on the merits would be if defendants had preserved error.

Because we find no basis for reversal in any of defendants' contentions in the Sulpher Springs case, we affirm the judgment of the trial court in that case.

Defendants did preserve error on the corroboration issue in the Demers case. At the conclusion of the evidence, they moved for judgment of acquittal alleging the absence of corroboration of accomplice testimony. We must therefore decide whether the trial court erred in overruling the motion on that ground.

Four witnesses testified in the Demers trial. John Demers testified to the theft of tools from a machine shed on his farm and his identification of tools recovered by sheriff's deputies. Two deputies testified to their recovery of the tools from a farm residence rented by defendant Siebrecht. Dennis West testified that he lived in the premises with Siebrecht at the time of the burglary. He said that he and defendants committed the offense. Because he was an accomplice, it was necessary that his testimony be corroborated.

■ We have repeatedly held that corroborative evidence need not be strong and need not be entirely inconsistent with innocence. The existence of corroborative evidence is a legal issue. *See, e. g., State v. Horn,* 282 N.W.2d 717, 731 (Iowa 1979); *State v. Cuevas,* 281 N.W.2d 627, 629 (Iowa 1979).

■■ A defendant's possession of property stolen in the alleged offense is corroborative evidence. *See State v. Gray,* 199 N.W.2d 57 (Iowa 1972); *State v. Gates,* 246 Iowa 344, 67 N.W.2d 579 (1954); *State v. Bohall,* 207 Iowa 219, 222 N.W. 389 (1928). Contrary to an assertion by defendants, the possession need not be exclusive. Defendants' reliance on *State v. Tilton,* 63 Iowa 117, 18 N.W. 716 (1884), is misplaced. That case concerned the sufficiency of evidence to convict rather than to corroborate.

■ Under these principles, West's testimony against Siebrecht was corroborated by Siebrecht's possession of the stolen prop-

erty. Therefore the trial court did not err in overruling Siebrecht's motion for judgment of acquittal.

 The situation concerning Dickerson is different. No testimony at trial except that of accomplice West linked him to the offense, to the Siebrecht residence, or to the stolen property. The State concedes West's testimony against Dickerson was not corroborated. It argues, however, that in a joint trial an accomplice's testimony need be corroborated against only one defendant. The State reasons that the purpose of the corroboration rule is to ensure the credibility of the accomplice and that this purpose is satisfied when other evidence links only one of the defendants to the offense. The flaw in this argument is that the terms and intent of the rule require the accomplice's reliability to be independently established as to each defendant. The issue is not whether the testimony is credible against one defendant; it is whether other evidence has been adduced "which shall tend to connect" a particular defendant with the commission of the offense. *See State v. Cuevas*, 281 N.W.2d at 629. The accomplice's testimony against each defendant must be corroborated. The mere fact of a joint trial does not relieve the State of its burden.

Courts in other jurisdictions have reached the same conclusion in analogous cases. *See Commonwealth v. Holmes*, 127 Mass. 424 (1879); *People v. Mullens*, 292 N.Y. 408, 52 N.E.2d 479 (1944), *rehearing denied*, 293 N.Y. 768, 57 N.E.2d 845 (1944); *Shemwell v. State*, 214 Tenn. 24, 377 S.W.2d 906 (1961). Under the State's theory, the fortuity of a joint trial would allow a defendant to be convicted on testimony of an accomplice without corroboration of the accomplice's testimony against that defendant. Our rule aligns us with the courts that believe this would create too great a possibility of convicting an innocent person.

Therefore we hold that the trial court erred in overruling Dickerson's motion for acquittal in the Demers case. We reverse the Dickerson conviction in that trial. Under double jeopardy principles we do not remand. *See Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

IV. *The search and seizure issue.* The remaining issue affects only Siebrecht's conviction in the Demers case. He contends the trial court erred in overruling his pretrial motion to suppress evidence of the stolen tools that were seized from his farm home under a search warrant. He alleges the search warrant was invalid because it was based on information gathered through a prior illegal search.

 Because a constitutional issue is involved, we view the relevant evidence from the suppression hearing de novo.

Buena Vista County sheriff's deputies photographed tire tracks left at the scene of the Demers burglary. They learned the tracks were made by Goodyear tires like some sold to Glenn Siebrecht of Alta. When the tires were not found on Glenn Siebrecht's vehicles, the deputies sought to look at the tires on vehicles of Glenn's son, defendant Douglas Siebrecht.

Two sheriff's deputies went to the Douglas Siebrecht farm residence at approximately 12:30 p. m. on December 4, 1979. The house was located one-fourth mile off the highway. A gravel lane led to the house. The east side of the house was visible from the highway. The officers went to one of the east doors and knocked. No one responded. While standing there the officers observed numerous tools inside the entryway. They took photographs of them through the window in the door. On their way back to the patrol car, they saw tire prints like those at the burglary scene. They also photographed them.

The officers developed and enlarged the tool photographs on that same date. They showed the pictures to John Demers. He said he was sure the tools were his but he could not make a positive identification of the tool boxes without knowing their color. He told the officers the colors of his tool boxes. The officers then returned to the Siebrecht home. No one was home on this occasion either. They looked through the door again and saw that the tool boxes matched Demers' description. With this in-

formation they obtained a search warrant under which the premises were subsequently searched and the tools seized.

In challenging the legality of the search, defendant Siebrecht relies on *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). He argues that the officers' activities on his premises were an intrusion that cannot be sustained because it does not meet the *Coolidge* prerequisites for valid plain view seizure of evidence. The State counters by contending that the officers' initial intrusion was not a search and that *Coolidge* thus does not apply.

We have recognized that the *Coolidge* rationale deals only with a post-intrusion seizure of evidence. *State v. Davis*, 228 N.W.2d 67 (Iowa 1975). Here the evidence was seized under a warrant, so that aspect of the *Coolidge* holding could have no application here. Moreover, the branch of the plain view doctrine discussed in *Coolidge* applies to a search which is already in progress. However, neither *Coolidge* nor that branch of the doctrine governs a challenged intrusion which is not a search in the constitutional sense:

> ... [T]he concern here is with plain view in quite a different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussion in *Coolidge*, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. This includes the case in which an officer ... without making a prior physical intrusion ... seizes an object ... within premises....

1 La Fave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.2(a) at 241–43 (1978); *see State v. Holtz*, 300 N.W.2d 888, 891 (Iowa 1981); *Latham v. Sullivan*, 295 N.W.2d 472, 476 (Iowa App.1980).

The controlling issue is whether the officers' intrusion in this case infringed defendant Siebrecht's reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) ("For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

The applicable standard was noted in *Lorenzana v. Superior Court*, 9 Cal.3d 626, 108 Cal.Rptr. 585, 587, 511 P.2d 33, 35 (1973):

> ... [T]he cases recognize the distinction between the observations of a police officer who has positioned himself upon property which has been opened to public common use, and the observations of an officer who ventures onto property which has not been so committed. A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectation of privacy in regard to observations made there. The officer who walks upon such property so used by the public does not wear a blindfold; the property owner must reasonably expect him to observe all that is visible. In substance the owner has invited the public and the officer to look and to see. But, by the same reasoning, the officer who intrudes upon property not so open to the public enjoys no such prerogatives.

This distinction was also expressed in *State v. Corbett*, 15 Or.App. 470, 475, 516 P.2d 487, 490 (1973):

> People commonly have different expectations, whether considered or not, for the access areas of their 'premises' than they do for more secluded areas. Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck. In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends ... If one has a reasonable

expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so. This principle has received general recognition in the cases. *See, e.g., United States v. Sherriff,* 546 F.2d 604 (5th Cir. 1977); *United States v. Anderson,* 552 F.2d 1296 (8th Cir. 1977); *United States v. Magana,* 512 F.2d 1169 (9th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975); *United States v. Hensel,* 509 F.Supp. 1376 (D.Me.1981); *Bickar v. Gray,* 380 F.Supp. 804 (N.D.Ohio 1974); *People v. Bradley,* 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129 (1969); *State v. Detlefson,* 335 So.2d 371 (Fla.App.1976); *State v. Brighter,* 60 Haw. 318, 589 P.2d 527 (1979); *State v. Sanders,* 374 So.2d 1186 (La.1979); *State v. Crea,* 305 Minn. 342, 233 N.W.2d 736 (1975) (per curiam).

The Siebrecht farmhouse was exposed to public view from the public highway. The lane provided access to those with business at the house. Like the trial court, we reject defendant's testimony that the house was posted with "Beware of Dog" and "Keep Out" signs, was padlocked, and was guarded by a chained watchdog. Testimony and photographs by the officers establish that the premises were neither posted nor guarded.

The officers went to the door at which visitors logically would knock. They were engaged in legitimate investigative activities. Their right to be where they were was no less than that of a member of the public calling at the home for any number of similarly legitimate purposes. Thus the officers did not invade defendant's reasonable expectation of privacy by coming to his door.

▇ Because they had a right to be there, they had a right to see what was visible from that position. Therefore their visual observations through the window of the door were not an intrusion into a reasonable expectation of privacy. These observations did not constitute a search in the constitutional sense.

▇ The situation is not changed by the photographing, enlarging, and return visit to the premises. The camera simply recorded what the officers saw. The enlargements merely enabled the officers to see the exposed items in more detail. This was not a use of technology to enable the officers to see materials they could not otherwise have seen. *See La Fave, supra* at §§ 2.2(b)–(d). Cases like *United States v. Kim,* 415 F.Supp. 1252 (D.Haw.1976), relied on by Siebrecht, are thus distinguishable. The return to the farmhouse had the same justification as the initial visit.

▇ We hold that no search of the premises occurred until after the officers obtained the search warrant. Because the information for the warrant was not obtained through an unlawful search, we find no merit in Siebrecht's challenge to the legality of the search. We hold that the trial court did not err in overruling his motion to suppress.

Therefore, in the Demers case, we reverse and do not remand as to Dickerson and affirm as to Siebrecht.

AFFIRMED IN No. 66331; AFFIRMED IN PART AND REVERSED IN PART IN No. 66347.