## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Commonwealth of Virginia

v.

Brown

April 16, 1990

Case No. CF900157

By JUDGE ALFRED D. SWERSKY

This matter is before the Court on defendant's Motion to Suppress certain evidence found as a result of a search of premises leased by him. For reasons stated in this opinion, the motion must be denied.

The facts are that the rental manager of Brown's apartment complex notified police that, upon entry into Brown's leased premises to conduct emergency repairs, she had observed plants which she believed to be marijuana but was not sure. She advised that it was necessary to return to the apartment with additional maintenance personnel to make further repairs. She was afraid to go back without the police being present. Investigator Ratliff was sent to the scene to offer the protection requested and to investigate further the allegations of the resident manager. The manager and the maintenance workers described to him what they had observed in the apartment, including the facts that the door locks on the front door had been changed without permission of the landlord and that the sliding glass patio door through which entrance was made was covered with a curtain as well as a "tarp." In entering through this door, it would be necessary to push back the curtain and the tarp. Ratliff accompanied the maintenance workers back to the apartment, positioned himself in a position to observe the interior when the curtain and "tarp" were moved back by the maintenance people,

and looked in when they entered. He did not enter Brown's apartment at that time nor did he specifically instruct anyone to hold the curtain and tarp open, even though one of the witnesses inferred that he wished them to do so. When the curtain and tarp were pulled back to admit three people, Ratliff observed the plants and smelled the odor of marijuana. He was within three feet of the door when it was opened and moved back to about fifteen feet. It is not clear whether Ratliff was on the patio; however, one witness said he believed that he was. Ratliff's observations are included in the affidavit used to obtain the search warrant.

Ratliff left to obtain a search warrant and requested that Investigator Fridley observe the apartment while he was obtaining the warrant. While at the rental office, Fridley observed the defendant in and around the apartment, checking the sliding glass door. When Brown came to the rental office, he was arrested by Fridley after a conference with Ratliff. Fridley and Sgt. Clancy, who was present with at least one other patrol officer, went into the apartment to "secure" it, to see if anyone else was in there and to prevent the destruction of evidence. No one was found in the apartment, it was then locked, and Fridley awaited Ratliff's return with the search warrant. None of Fridley's nor Clancy's observations made while in the apartment were relayed to Ratliff, nor do any appear in the affidavit. Sgt. Clancy may have told Ratliff before the warrant was obtained that "it looks good." A search warrant was obtained, and the premises then searched.

Brown complains of Ratliff's warrantless "search" of the premises, as well as Fridley's warrantless entry and argues that the evidence seized should be suppressed. The Commonwealth responds that Ratliff's observations did not constitute a search and that the police had the right to secure the premises to insure that no one else was there and that no evidence was destroyed. Further, the prosecution argues that no evidence obtained during the securing of the premises was used in obtaining the warrant.

The threshold question is whether Ratliff's conduct constituted a search of Brown's premises without a warrant from which he obtained information of value in obtaining the search warrant. The Court finds that this conduct

did not constitute a search. The private nature of the entry into the premises to effect repairs by the landlord was not changed by the presence of police. The entry was made under the authority of the lease at a time when it would normally have been done. The fears of the landlord provide an objective basis for the police presence in an area of the apartment complex open to the public, i.e., outside the entry to the apartments. Even if Ratliff's subjective motive was to obtain a look inside the apartment to verify the landlord's information, such subjective intent plays no role in determining the propriety of his actions.

His observations are much like those of the police officers in *Sumdum v. State*, 612 P.2d 1018 (Alaska, 1980), in which the Court held that the observations of the officers when a motel room door was opened by the motel clerk for a private purpose in the presence of the police could afford a basis for probable cause for entry into and search of the room and the arrest of the defendant.

Since Ratliff was in a place open to the public, his observations need not be inadvertent as required by *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). *See, Delong v. Commonwealth*, 234 Va. 357, 364-66 (1987), and *State v. Dickerson*, 313 N.W.2d 526 (Iowa, 1981). The authorities cited by Brown in his letter of April 12, 1990, are inapposite in view of the Court's finding that Ratliff did not direct or order the holding back of the curtain and tarp.

It is significant to note here that after making his observations, Ratliff did not immediately enter the premises to search for and seize evidence. He sought and obtained a search warrant for the premises and revealed to the issuing magistrate the circumstances surrounding his observations. Thus, the Court finds no constitutional infirmity in Ratliff's actions.

Defendant complains of the actions of Fridley and Clancy in "securing" the premises by a warrantless entry and search. It is clear that no evidence was obtained by Fridley or Clancy that led to the issuance of the search warrant, and the Court finds that their actions in securing the apartment to insure that no one else was present and that no evidence was being destroyed while the warrant was being obtained was justified under the circumstances

of this case. *See, Keeter v. Commonwealth*, 222 Va. 134 (1981), and *Crosby v. Commonwealth*, 6 Va. App. 193 (1988).

For these reasons, the Motion to Suppress must be denied.