# IN THE COURT OF APPEALS OF IOWA

No. 3-1193 / 12-1168
Filed April 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,
**vs.**

**RAVIN CORNELIUS MILLER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark J. Smith (attorney-withdrawal motion), John D. Telleen (defense motion to extend discovery), Bobbi M. Alpers (attorney-withdrawal motion), Gary D. McKenrick (jury waiver, continuance), and Nancy S. Tabor (motions to dismiss and suppress and trial), Judges.

Ravin Miller appeals his conviction for possession of controlled substance (marijuana) with intent to deliver as a habitual offender. **AFFIRMED.**

Jack E. Dusthimer, Davenport, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Michael J. Walton, County Attorney, and Kelly G. Cunningham, Assistant County Attorney, for appellee.

Considered by Potterfield, P.J., and Doyle and Bower, JJ. Tabor, J. takes no part.

**BOWER, J.**

Ravin Miller appeals his conviction, following a bench trial, for possession of a controlled substance (marijuana) with intent to deliver as a habitual offender. *See* Iowa Code §§ 124.401(1)(d), .204(4)(m) (marijuana), .411 (subsequent offenses), 902.8 (minimum sentence-habitual) (2011). Miller claims the district court erred in denying his motion to dismiss based on a violation of his right to be brought to trial within one year of his arraignment. *See* Iowa R. of Crim. P. 2.33(2)(c).[1] Before the trial information was filed, Miller filed a "written arraignment and plea of not guilty" specifying the one-year-from-arraignment period "will be computed from the date of filing of the Trial Information." Miller acquiesced to this computation; his trial was held within one year of the filing of the trial information, and the court did not abuse its discretion in denying his motion to dismiss.

Miller also claims the evidence is insufficient to support the "intent to deliver" element of his conviction.[2] Reviewing the record in the light most favorable to the State, we conclude sufficient evidence supports his conviction. Accordingly, we affirm.

---

[1] Rule 2.33(2)(c) states: "All criminal cases must be brought to trial within one year after the defendant's initial arraignment . . . unless an extension is granted by the court, upon a showing of good cause."

[2] Miller also asserts a violation of the Iowa Constitution. Trial counsel did not claim any such violation; therefore, we will not address this issue for the first time on appeal. *See* *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Further, the record does not allow us to address Miller's alternative ineffective-assistance-of-counsel claim on this issue.

## I. Background Facts and Proceedings

**A. Traffic Stop.** On January 23, 2011, Officer McNeill was on routine patrol in Davenport. He works second shift in high crime areas and makes three to four marijuana arrests per week. McNeill observed Miller driving a car with a broken taillight. After following the vehicle for several blocks in a marked police car, the officer was able to pull in behind Miller's car and activate the emergency lights. Miller did not stop, so the officer turned on the siren. Eventually Miller pulled over. McNeill approached and observed Miller's pants and belt were undone and pulled part way down. Upon questioning, Miller stated the car was not his, and he was driving to an auto parts store to repair the taillight. Miller provided an insurance card for a different vehicle.

When McNeill returned to his patrol car and called in the license plate/driver information, he learned Miller had several prior convictions for controlled substances. McNeill requested a canine officer. The district court found the video of the stop shows, immediately after McNeill left the driver's door to check the license, "a rocking motion consistent with a person sitting in the driver's seat pulling up his pants or making other movements while remaining seated."

By the time McNeill returned to the vehicle, Miller had pulled his pants up and had fastened them. McNeill asked Miller to get out of the car, and Miller exited while holding a cell phone in each hand. Miller consented to a search of the vehicle but refused a search of his person. McNeill's subsequent pat down revealed money in Miller's pocket. McNeill handcuffed Miller.

A female arrived at the scene and asked if she could take the car. McNeill declined her request and asked her to leave. Miller identified her as a friend who lived nearby. Miller told McNeill he had been planning to stop by her house.

Officer Jensen arrived with his canine partner, and the dog alerted to the driver's side of Miller's car. Jensen then searched the inside of the car and found a small plastic bag with a corner torn off and a drill chuck with melted plastic on its end. Meanwhile, McNeill was questioning Miller, who stated he did not have a job and the money from his pocket was "the luck of the draw." Jensen confirmed Miller had been read his *Miranda* rights and questioned him about the baggie and drill chuck. Miller stated the drill chuck could be a pipe, but neither item belonged to him.

Based on those facts and his experience with people hiding narcotics in their pants, McNeill suspected Miller was involved with narcotics. McNeil decided to arrest Miller for the taillight violation. When McNeill later complied with Miller's request to loosen the handcuffs, McNeill also smelled marijuana. He then shook Miller's pants, and a plastic bag holding a leafy green substance fell on the ground. This baggie contained another baggie holding a leafy green substance. Based on his training, McNeill believed the substance to be marijuana.

**B. Criminal Proceedings.** Miller's arraignment was originally set for February 24. On February 14, 2011, before the trial information was filed, Miller filed a "written arraignment and plea of not guilty" identifying Eric Puryear as his attorney and stating Miller "voluntarily waive[d]" his "right to arraignment in open

court" and his "right to have the court read" the trial information, "choosing instead to sign this Written Arraignment and plea of Not Guilty. I understand that times for further proceedings which are computed from the date of arraignment will be computed from the date of filing of the Trial Information." Miller signed under oath and under penalty of perjury. Miller waived his right to a 90-day speedy trial in the written arraignment.

Miller's February 24 arraignment was continued to March 3, 2011. The State filed a trial information on March 3—Count I, Possession with intent to deliver a schedule I controlled substance-marijuana (class "D" felony). The district court's March 3 "Arraignment Order" set a pretrial conference on March 25. The court's March 25 order stated Miller and counsel Puryear appeared and an August 8, 2011, trial date "is confirmed."

On August 3, 2011, five days before trial, Miller requested new counsel, and his request was granted. On August 12 the court appointed attorney Harlan Giese to represent Miller and set another pretrial conference for October 14.

On August 29, 2011, a hearing was held on attorney Giese's application for court approval to conduct depositions and extend time limits for motions, and the State's objections. In support of his application, Giese stated: "As the court is aware, times for doing discovery and filing motions are related to the arraignment date in the case" and Miller "was arraigned on this particular case on March 3." Thus, the times for discovery and to file motions had expired. The court granted the application, "given the fact Mr. Giese has just been retained recently and hasn't had an opportunity to review everything."

In the October 14, 2011 pretrial conference order, the court stated the parties anticipated a three-day jury trial, and it set trial for February 13, 2012.

On January 27, 2012, attorney Giese filed a motion to suppress evidence; the court set hearing on the motion for February 8. On January 31, thirteen days before trial, Miller again requested new counsel, and the court set a hearing for February 8.

At the February 8, 2012 hearing on Miller's requests—held just five days before trial—the State objected to Giese being allowed to withdraw, noting Miller recently had Giese removed from another criminal case that was close to a one-year deadline, and Miller was now on his fourth attorney in that case. The State argued Miller's request for a new attorney was being made so he could argue on appeal that "the State didn't take me to trial within a year."

Giese responded he did not think it would be appropriate for him to represent Miller in this case over Miller's objections when there is "a finding on the record in a different case that there is a problem between Mr. Miller and myself." The following exchange occurred:

> [THE COURT]: And, Mr. Miller is there anything you wish to add with regard to your relationship with Mr. Giese presently or in the past?
> [MR. MILLER]: I want a fair trial and if I [think] counsel wasn't right for me, then I should have the counsel that I wanted . . . . [T]hey [are] trying to get me on some serious time . . . and in that case I should have just kept the first one . . . I don't even know his name . . . . I just want the right counsel and I will go forward.
> [THE COURT]: With regard to Mr. Giese, has he represented you before in matters?
> [MR. MILLER]: He represented me before and [I was found] guilty, but it got reversed on appeal . . . so that's why I just feel I want to get the right counsel and do the right thing.
> . . . .

[MR. MILLER] And for the record, I never asked for any continuance, I just asked for the proper counsel. After I talk with my [new] lawyer, if he says he wants to go by [March] 3rd, that's fine, or if he say he wants to go by tomorrow. I want to go to trial; I just want the proper counsel. That's all I'm saying.

[THE COURT]: The court will note that your dispute is not with going to trial by the end of one year as the . . . rules would tell us . . . but your concern is that you wish to have your choice of counsel representing you.

[MR. MILLER]: Right.

The court allowed attorney Giese to withdraw and, for the short term, appointed attorney DeLange as Miller's counsel. The court advised Miller to "retain any private counsel that you expect to have right away." The court set a pretrial conference for February 10, stating: "We will give directions to Mr. DeLange to appear . . . . And [Mr. Miller] if you have Mr. Scovil who is going to represent you . . . then he needs to be there too."

On February 13, the court set a hearing on Miller's previously-filed motion to suppress for February 15. The State filed a resistance. On February 15, Miller appeared for the suppression hearing with his new attorney, Douglas Scovil. After Scovil learned of a video of the traffic stop, he withdrew the suppression motion without prejudice so he could review the video. The court ordered, if defense counsel believed an actual basis existed for a motion to suppress after viewing the video, counsel would be allowed to refile the motion.

On February 24, Miller waived his right to a jury trial. Also on February 24, the district court conducted a colloquy, accepted Miller's waiver, and rescheduled trial for Monday, February 27.

On February 27, the morning of trial, Miller reaffirmed his decision to waive a jury trial. The court asked if there were any preliminary matters, and

defense counsel Scovil stated he had two motions to file with the court. The first motion sought a dismissal and claimed, under the rules of criminal procedure, the starting date to compute the one-year-speedy-trial deadline for Miller's trial was February 14, 2011—the date Miller filed his written arraignment.

Iowa Rule of Criminal Procedure 2.8(1) "*Conduct of arraignment*" provides: "Unless otherwise ordered by the court, a defendant represented by an attorney may waive the formal arraignment contemplated by this rule and enter a plea of not guilty by executing and filing a written arraignment that substantially complies with the form that accompanies these rules." Iowa Rule of Criminal Procedure Rule 2.11(4) states: "If a written arraignment under 2.8(1) is used, the date of arraignment is the date the written arraignment is filed."

The State resisted, noting at 11:00 a.m. on March 3, the district court conducted Miller's arraignment in a courtroom with the State present.[3] The State claimed the rule allowing defense attorneys to file a written arraignment when they had not received the trial information is only a "means of convenience for not requiring the defendant to come into open court and make that personal appearance." The State also noted the issues at an arraignment are based on the defendant's review of the trial information, and without the trial information, the defendant cannot know "what those charges were [in order] to be advised of what penalties [are faced]." Finally, the State argued it had always been

---

[3] The court's arraignment order states: "Defendant appears for arraignment represented by: Eric David Puryear." Therefore, it appears Miller appeared for the arraignment on March 3. We note the original file in this case is missing.

prepared to proceed and each continuance "was occasioned by Mr. Miller" complaining about his attorneys.

Defense counsel responded by quoting rule 2.8(1) and by pointing out the applicable form is rule 2.37-Form 6. Counsel claimed the italicized language in Form 6 below and rule 2.33(c) required Miller's case to be dismissed. Form 6 states:

> 4. I have been advised by the above attorney and understand that I have a right to arraignment in open court, and I hereby voluntarily waive that right, choosing instead to sign this written arraignment and plea of not guilty. *I understand that times for further proceedings which are computed from the date of arraignment will be computed from the date of filing this written arraignment and plea of not guilty.*
> 5. I have received a copy of the . . . trial information[4] which charges me with the crime(s) of _____in violation of Iowa Code section(s) _____ (insert year). I have read it and, and I have familiarized myself with its contents.

In response, the State quoted paragraphs 4 and 5 of the written arraignment Miller filed and claimed: (1) under Miller's own express language, dates "computed from the date of arraignment will be computed from the date of filing of the trial information," or March 3; and (2) Miller's paragraph 5 language recognizes there will be an arraignment in the future, and the arraignment did occur on March 3.[5]

---

[4] We note paragraph 5 in Form 6 presumes the defendant had already received a copy of the trial information. We also note Iowa Rule of Criminal Procedure 2.37 initially states: "The following forms are illustrative and not mandatory, but any particular instrument shall substantially comply with the form illustrated."

[5] Paragraphs 4 and 5 of Miller's written arraignment stated:

> 4. Attorney Eric D. Puryear has advised me and I understand I have a right to arraignment in open court and to have the Court read for and to me the Trial Information and Minutes of Evidence, and I hereby voluntarily waive those rights, choosing instead to sign this Written

The court orally ruled: "[P]ursuant to the written arraignment form voluntarily signed and filed by [Miller] that he agreed to have the computation from the date of the filing of the trial information, which was March 3," the motion is denied.

Defense counsel then claimed Miller's [first] prior counsel, Attorney Puryear, did not have "the ability to waive rights or to change the laws that exist under the Rules of Criminal Procedure" and Miller is not bound by prior counsel's incorrect statement of the law that the time is run from the filing of the trial information. The court rejected this claim and orally ruled: "Well, he voluntarily signed it, and I find that that's good cause to extend it to March 3 for just the trial information date, so we have until March 3 to get this heard."[6]

Defense counsel next filed and addressed a new motion to suppress evidence—the marijuana and the money. The State, having resisted Miller's earlier motion to suppress, argued this motion should be heard in conjunction

---

Arraignment and plea of Not Guilty. I understand that times for further proceedings which are computed from the date of arraignment will be computed from the date of filing of the Trial Information.

    5. . . . [I]f the Trial Information has not yet been received; I do understand that upon my attorney's receipt . . . it will then be available to me. I waive my right to read the Trial Information or have it read to me at the time of my arraignment.

[6] The court's written ruling, issued the next day, stated:

The Motion to Dismiss was denied for reasons on the record finding that the date to compute the year deadline was the date that the arraignment was held, the order was signed, and the trial information filed, despite the filing of the written arraignment two weeks earlier. The defendant voluntarily and knowingly waived his right to have the date of filing the written arraignment used to compute the timelines by his voluntary signature on his written arraignment form. The Court found good cause to accept that waiver and use the date the Trial Information was filed and the arraignment was actually held with the State appearing before the court.

with the trial due to the March 3 deadline fast approaching. Counsel responded Miller's suppression motion should be heard separately in order to not taint the trial record. The court ruled the motion to suppress would be heard separately and rescheduled the bench trial for February 29, 2012. Therefore, only the suppression hearing commenced. Officers McNeill and Jenson testified. The next day, February 28, the court denied Miller's motion as to the marijuana evidence and granted his motion concerning the money seized.

Trial commenced on February 29, 2012. The Stated entered the video of the traffic stop into evidence. In addition to the testimony of the officers present at the stop, an officer experienced in investigating drug transactions testified. At the close of the State's evidence Miller moved for judgment of acquittal, claiming the evidence was insufficient to show possession with intent to deliver. The court took the motion under advisement. Miller did not testify but stipulated to his identity in the cases showing habitual offender status.[7]

The court's March 2, 2012 ruling denied Miller's motion for judgment of acquittal and found him guilty as charged. At Miller's sentencing hearing, the court denied his motion for a new trial. The court sentenced Miller to serve, as a habitual offender, a fifteen-year prison sentence with a three-year mandatory minimum. The court did not impose a fine but did assess surcharges. This appeal followed.

---

[7] Miller acknowledged his convictions in January 2007 and June 2002 for possession of a controlled substance, marijuana, with intent to deliver.

## II. Scope and Standards of Review

We review the district court's ruling on a "motion to dismiss based on speedy-trial grounds for an abuse of discretion." *State v. Winters*, 690 N.W.2d 903, 907 (Iowa 2005). But when speedy-trial grounds are at issue, the discretion we give to the district court narrows. *Id.*

We review Miller's challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008). "The district court's findings of guilt are binding on appeal if supported by substantial evidence." *Id.* "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* We "view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record." *State v. Rohm*, 609 N.W.2d 504, 509 (Iowa 2000).

## III. Trial within One Year of Arraignment

Miller claims the district court erred in overruling his motion to dismiss based on the State's alleged failure to bring his case to trial within one year as required by rule 2.33(2)(c) (stating "within one year after the defendant's initial arraignment"). On appeal, the parties dispute what constitutes the triggering date for the one-year period.[8] If the initial arraignment occurred on February 14,

---

[8] Miller notes "the 'initial' arraignment" was set for February 24, but "it appears the State obtained an ex parte Order continuing the Arraignment" to March 3. In this appeal he first claims the district court should have used February 24 as the initial arraignment date. Miller cites no authority for his proposition the district court's action of continuing the first-scheduled arraignment to March 3 somehow invalidates March 3 from being the "initial arraignment" date. Further, this argument was not made to the district court, and we will not address it for the first time on appeal. *Meier*, 641 N.W.2d at 537.

2011, then the February 29, 2012 trial started outside the one-year period. If the initial arraignment occurred on March 3, 2011, Miller's trial met the speedy-trial requirement.

Miller claims the "initial arraignment" occurred on the date he filed his written arraignment and plea—February 14, 2011. In support, he cites us to the "unambiguous 'triggering' language" in paragraph 4 of rule 2.37-Form 6. We are not persuaded because Miller's written arraignment did not utilize the language of Form 6, paragraph 4.

Second, Miller claims interpreting the term "initial arraignment" to mean "the actual filing of the Trial Information" on March 3 would be an "absurd interpretation based on the facts of this case."

The State responds the "district court scheduled arraignment for March 3, 2011. It was on this date that the trial information was filed, the charges against the defendant were stated, and the court accepted the defendant's plea." *See* Iowa R. Crim. P. 2.8(1) (providing the defendant at arraignment "shall be given a copy of the indictment or information before being called upon to plead"). The State claims February 14 is not the arraignment date because in *State v. Hempton*, our supreme court interpreted initial arraignment for the purposes of the speedy-trial rule to be the *proceeding* in which a plea is entered:

> We are thus required to decide what the term "initial arrangement" means . . . . It is obvious [the] defendant's appearance [before Illinois and Iowa magistrates did not constitute] an arraignment . . . . Those proceedings were not taken to obtain a plea to the charges.
> . . . .
> In [*State v. Magnuson*, 308 N.W.2d 83 (Iowa 1981)] we assumed that the one-year period . . . is triggered by the district

court arraignment which occurs after the filing of an indictment or information.

[W]e believe this interpretation is reasonable. A case can be brought to trial only when it is in court. Even when a prosecution has been initiated, the case is subject to trial only after arraignment and plea . . . . It is therefore logical that the one-year period should start with arraignment.

310 N.W.2d 206, 208 (Iowa 1981); *see State v. Dickerson*, 313 N.W.2d 526, 529 (Iowa 1981) ("Initial arraignment means the arraignment in district court after indictment or filing of a trial information."); *Wright v. Denato*, 178 N.W.2d 339, 341 (Iowa 1970) ("Arraignment is a procedural right accorded defendants only after indictment (or the filing of a county attorney's information).").

The State additionally points to paragraph 5 of Miller's written arraignment, stating he waives "my right to read the Trial Information or have it read to me at the time of my arraignment." The State asserts because the trial information "had not yet been filed, Miller could not have been advised of all the rights and matters specified" in rule 2.8, and therefore, his "written arraignment cannot be used" as the initial arraignment and triggering date "because it does not satisfy the full purposes of an arraignment." The State concludes, under rule 2.8(1) and *Hempton*, Miller's right to a speedy trial within one year of arraignment is calculated from March 3, when the trial information became available to him and when the court's arraignment order was filed. As such, there was no speedy-trial violation.

But, based on the specific circumstances in this case, we need not resolve the issue above. Even if we *assume* February 14 is the initial arraignment date, the district court did not abuse its discretion. As the district court found, Miller

knowingly and voluntarily signed and filed the written arraignment and plea. Miller thereby waived the use of February 14 as the initial arraignment date because his written arraignment expressly provided: "I understand that times for further proceedings which are computed from the date of arraignment will be computed from the date of filing of the Trial Information." *See Winters*, 690 N.W.2d at 908 (ruling trial may proceed outside the speedy-trial time period when the State proves the defendant waived speedy trial); *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001) (holding dismissal is required "unless the defendant has waived speedy trial, the delay is attributable to the defendant, or other 'good cause' exists for the delay"); *see also State v. Miller*, 311 N.W.2d 81, 84 (Iowa 1981) ("A defendant who elects to forgo his speedy trial right by . . . acquiescing in delay should not profit from the State's failure to obtain an extension of time period for trial.").

The trial information was filed March 3, and in his written arraignment Miller agreed to make March 3 the arraignment date for purposes of the one-year speedy-trial calculation.[9]  In other words, Miller acquiesced to the date from which the speedy-trial determination would be calculated, and his filing informed the State and the district court that he would not count the days after his written arraignment was filed up until the day the trial information was filed.  We conclude the trial court did not abuse its discretion in denying Miller's motion to

---

[9] We find no merit to Miller's claim his "written arraignment" form "matched the language found in the rules," or his claim that nowhere did he "agree to have the computation from the date of the filing of the trial information."

dismiss. *See State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981) (finding defense counsel may properly waive a defendant's right to a speedy trial).

## IV. Sufficiency of the Evidence

Miller challenges the sufficiency of the evidence supporting his conviction. The State had to prove Miller knowingly possessed marijuana, he knew the substance he possessed was marijuana, and he possessed the substance with the specific intent to deliver a controlled substance. See Iowa Code § 124.401(1).

On appeal, Miller acknowledges, in the light most favorable to the State: (1) he did not immediately pull over; (2) he attempted to conceal the marijuana inside his pants; (3) he was driving a vehicle arguably registered to another person; (4) there was more than one cell phone in the vehicle; (5) two baggies were used in packaging the marijuana; and (6) "some of the marijuana may appear to have recently [been] taken from a compressed 'brick.'"

But Miller claims the State's expert, Sargent Smull, failed to specifically identify the above-listed factors as proof of "intent to deliver" or "delivery." Also, Miller points out Smull testified an ultimate user could purchase up to an ounce, larger amounts sold to a user can be in a full sandwich baggy, and placing drugs in the crotch area is common for people hiding drugs. Miller recognizes "not having paraphernalia may be indicative of distribution" but claims "it was opined the drill bit found in the vehicle could be used as a pipe" and testimony established marijuana can be used by methods other than smoking. In conclusion, Miller asserts these facts, whether considered "individually or in toto,"

lead only to the level of proof and conclusion that he was "a simple drug 'user.'" *See State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (ruling evidence that "merely raises suspicion, speculation, or conjecture is insufficient" to support a conviction).

The element of intent is seldom susceptible of proof by direct evidence. *State v. Evans*, 671 N.W.2d 720, 724–25 (Iowa 2003); *see State v. Radeke*, 444 N.W.2d 476, 479 (Iowa 1989) (generally a defendant will "not admit later to having the intention which the crime requires"). Intent may be inferred by the surrounding circumstances. *State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004). "[A]n actor will ordinarily be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act." *Id.* "The requirement of proof beyond a reasonable doubt is satisfied if it is more likely than not that the inference of intent is true." *State v. Finnel*, 515 N.W.2d 41, 42 (Iowa 1994).

Miller's argument that the amount of marijuana he possessed was equally consistent with possession for personal use fails to recognize the "amount of the controlled substance is not the only factor which may be considered" in determining intent. *State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996). In the context of controlled-substance prosecutions, a defendant's intent to deliver also can be inferred from the manner of wrapping and packaging the drugs. *State v. Birkestrand*, 239 N.W.2d 353, 362 (Iowa 1976); *State v. See*, 532 N.W.2d 166, 169 (Iowa Ct. App. 1995). Additionally, "opinion testimony by law enforcement personnel experienced in the area of buying and selling drugs may be offered as

evidence for purposes of aiding the trier of fact in determining intent." *State v. Grant*, 722 N.W.2d 645, 648 (Iowa 2006). Our supreme court has instructed:

> [W]hile a witness may not testify whether marijuana is held for personal use, [a witness] may testify on the pattern or modus operandi of a certain offense and compare the facts of the case to it. The distinction is that, on the one hand, the witness is asked for an opinion based upon certain evidence as it relates to a well-defined modus operandi and on the other, an opinion on the guilt or innocence of the defendant. The former is proper; the latter is not.

*State v. Olsen*, 315 N.W.2d 1, 6-7 (Iowa 1982) (citations omitted) (noting the court has approved the question, "did defendant's actions fit within the modus operandi, so long as the witness is not asked whether the defendant is innocent or guilty").

During trial Smull, who had eighteen years of experience in narcotics investigations, testified marijuana users ingest the drug by smoking or eating it. For smoking, various types of paraphernalia are used, including ceramic pipes, blunts, and items that have been altered to be a pipe—pop cans, beer cans, hollowed-out cigars. Based on the heat source applied to the drug pipes that Smull had seized, one could not apply the heat source to plastic because the plastic would melt.

Smull explained he had investigated hundreds of cases involving the distribution of marijuana and is familiar with how the drug is packaged for shipment to Iowa—brick forms, 20-pound bundles, 40-pound bundles—and how dealers package marijuana for users—depending on the increment being sold, brick form, sandwich baggies, or gallon-sized locked baggies.

Smull explained the hierarchy of dealers: low-level dealers sell to users; mid-level dealers sell to low-level dealers and users; high-level dealers deal in different weights than the mid-level dealers; and the distributor is at the top providing large quantities to the community area. Smull testified, in general, any "amount of marijuana can be a deliverable amount of drugs . . . . Delivering is transferring a controlled substance from one person to another, so any amount can be deliverable." When a customer calls and places an order, drug dealers sometimes "go out and meet customers on the street," sometimes they meet out in public, "it depends on the method of operation."

Sergeant Smull testified common places for drugs to be hidden on a person are "the crotch area, their buttocks area, [and] their shoes." He also explained cell phones can be relevant to a narcotics investigation, and based on his experience, multiple cell phones have been found on individuals involved in the distribution of controlled substances.

Smull testified a dealer sells marijuana to the user by weight.

Q. If a customer ordered up a nickel bag of marijuana, what portion of a sandwich baggy would be encompassed in packaging up that nickel quantity? A. We've seen it in the corners.
Q. As you get to higher increments, like the half-ounce, what packaging have you seized in the past that would contain quantities like that? A. I've seen a larger portion of the corner used in a full sandwich baggy.

Smull explained the price of "low-grade" marijuana by weight. The lowest increment sold by a dealer to a user is a one-pipe/nickel bag, 1-2 grams for $5.00. The next level sold on the street to a user is 1/8 ounce, 3-3.5 grams for $10. The next level commonly sold to a user is 1/4 ounce of marijuana, 7 grams

for $25. The final quantity that Smull would associate, generally, with a "user purchase" is 1/2 ounce, 14 grams for $50.

Smull had experienced a user buying a one-ounce quantity but such a user purchase occurred "very rarely"—"more of an anomaly." One ounce, 28.35 grams of low-grade marijuana, costs $80 to $100.

After Smull reviewed the police department's investigative reports, he understood that the baggie holding 12.86 grams was found inside the bag holding 17.86 grams. Based on his experience, Smull testified the inside baggie's net weight was consistent with the sale of a "half ounce" on the street. But the 17.86 grams in the outer bag was not consistent with the user-purchase quantities he had previously described.

> Q. Okay. So it's not a half ounce? A. No.
> Q. It's not an ounce? A. No.
> Q. Is that an odd amount? A. Yes.
> . . . .
> Q. Would there be any reason for an individual if they were to purchase an ounce of marijuana for personal use to have it broken down into two separate bags? A. I've not seen it that way.
> Q. All right. Now, when you consider the relationship of those two bags of marijuana to one another, in your expert opinion, what is significant to you about those two items? [Objection, discussion, objection overruled] A. Reference the two baggies, the one inside that was packaged up in the half ounce inside the bigger bag that had loose marijuana.
> Q. Is that significant to you? A. It can be, yes.
> . . . .
> Q. Sergeant Smull, in your analysis of the evidence, what are the factors that are critical you? A. When you look at all of it together, when you look at the marijuana that was found, this could be considered for distribution.
> Q. Okay. Is the method of packaging and the breakdown between the two quantities significant to you? A. The packaging is consistent with what we've seen in our investigations with the sandwich baggies. The half-ounce quantity that was inside the larger bag is sold on the street.

The district court found Miller guilty beyond a reasonable doubt "using its reason, common sense, and experience and considering all the facts and circumstances, for example":

> [Miller's] location in Davenport, his out of the way route to a main road, his failure to stop when the officer activated his lights, the credibility finding of the officer's statements regarding the pants, the rocking motion of the car, the inconsistent statements [he was on his way to an auto parts store, he was going to stop by the female's house], the pungent odor of the marijuana, the location of the marijuana in [Miller's] pants, [and] the amount of marijuana and its manner of packaging.

We note the overall quantity (30.72 grams) of the drugs Miller possessed is more than a "rare" or anomalous user-purchase of one ounce (28.35 grams). This fact, the drug's brick-like appearance, the double-baggie packaging, the two cell phones, the lack of a user's paraphernalia, and the expert testimony was sufficient evidence to support the court's conclusion Miller intended to deliver, at least some, of the marijuana found in his possession. *See State v. Dinkins*, 553 N.W.2d 339, 342 (Iowa Ct. App. 1996).

**AFFIRMED.**