**STATE of Iowa, Appellee,**

v.

**Mark Kane BUGELY, Appellant.**

**No. 95–1839.**

Supreme Court of Iowa.

April 23, 1997.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Mary E. Richards, County Attorney, and Stephen H. Holmes, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Mark Kane Bugely, appeals his convictions and sentences for three counts of third-degree burglary. *See* Iowa Code

§§ 713.1, .6A (1995). He raises two issues: (1) the testimony of an accomplice was not independently corroborated; and (2) his trial counsel was ineffective for failing to make the correct objection to the testimony of a rebuttal witness. We affirm.

## I. *Background Facts and Proceedings.*

This appeal arises from the trial of three consolidated cases, charging Bugely with five counts of third-degree burglary as a habitual offender:

| Case | Burglary Location | Date of Offense |
|---|---|---|
| 1 | Clyde Black & Sons Feed Co., Kelly | 10–16–94 |
| | Holland's Garage, McCallsburg | 1–2–95 |
| 2 | Ripp residence, Ames | 12–2–94 |
| 3 | Twin Anchors Golf and Country Club, Colo | 12–26–94 |
| | Twin Anchors RV Center, Colo | 12–26–94 |

Although the jury returned guilty verdicts on all five charges, the trial court granted Bugely a new trial in the first case because he had not been provided a complete transcript of a prior mistrial of that case. Consequently, our discussion of the facts focuses primarily on the remaining two cases before us on appeal. We will not recite all the evidence, only that pertinent to the issues before us.

On December 2, 1995, thieves burglarized the home of William and Jane Ripp. Among the items taken were two ruby rings. Officers investigating the break-in found two sets of footprints, large boot prints and small tennis shoe prints.

Approximately three weeks later, thieves broke into the Twin Anchors Golf and Country Club and the Twin Anchors RV Center. They took only some Susan B. Anthony coins from the RV Center. The investigating officers discovered two sets of footprints at these locations also, one set made by a large-size tennis shoe and the other by a much smaller-size tennis shoe.

The police took plaster casts of the footprints. The larger prints at both locations were the same size. The smaller prints at the Ripp and Twin Anchors burglaries also matched; they both came from the same pair of Nike tennis shoes, approximately size 8½.

The detective investigating the Twin Anchors burglaries suspected a terminated employee, Kevin Johnson, of these break-ins. Johnson was eventually questioned. He admitted committing all five burglaries and implicated his friend, Mark Bugely.

After pleading guilty pursuant to a plea bargain, Johnson testified at Bugely's trial that he and Bugely broke into the five locations that had been burglarized. He said they divided up the money and rings found at the Ripp residence. After that burglary, they went to the apartment of their girlfriends, who were living together. Johnson testified Bugely gave the ruby ring Bugely had taken from the Ripp residence to Bugely's then-girlfriend, Stacey Parks, that evening.

Parks also testified at trial. She said Bugely gave her a ruby ring on December 2, 1995, telling her he had just purchased the ring that night at the mall. Johnson's girlfriend confirmed these events. Mrs. Ripp identified the ring given to Parks as one stolen from her residence on December 2, 1995.

The authorities were able to match a pair of boots and a pair of tennis shoes owned by Johnson to the large prints discovered at the Ripp residence and the Twin Anchors locations. They did not find any tennis shoes owned by Bugely that matched the small footprints made during the burglaries. Johnson testified, however, that Bugely told him the day after the Twin Anchors burglaries that he, Bugely, had thrown away the shoes he had worn during the burglaries.

The investigating officer testified the small footprints were probably made by a size 8½ shoe, possibly a size 9 at the largest. He also stated it was not always possible to identify the exact size of a shoe from a print because manufacturers use the same outsole for several shoe sizes. A former girlfriend of Bugely, Shawn Young, testified she used to wear Bugely's shoes because she and Bugely wore the same size—size 8½. Johnson examined the shoes Bugely was wearing during the trial and testified they were size 7½.

Bugely took the stand in his own defense. He testified he did not commit the burglaries, he did not throw away any of his tennis shoes, Johnson had given him the ruby ring

Bugely then gave to Stacey Parks, and he wore a size 7½ shoe. Rebuttal witnesses were called by the State; their testimony will be discussed in detail in connection with Bugely's ineffective-assistance-of-counsel claim.

Bugely requested a judgment of acquittal, which the trial court refused. As noted above, the jury returned guilty verdicts on all five counts. The trial court granted a new trial on two counts and sentenced Bugely to fifteen years on each Twin Anchors burglary and five years on the Ripp burglary, all sentences to run consecutively. Bugely appeals, claiming the court erred in failing to grant a judgment of acquittal because Johnson's testimony that Bugely participated in the burglaries was not corroborated. We infer from this argument that Bugely contends without the testimony of the accomplice, the evidence is insufficient to support a verdict of guilty. Bugely also complains his trial counsel was ineffective for failing to make the proper objection to rebuttal testimony offered by the State.

## II. *Corroboration of Accomplice Testimony.*

### A. *General principles.* Iowa Rule of Criminal Procedure 20(3) requires that testimony of an accomplice be corroborated:

A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

The existence of corroborating evidence is a legal question for the court. *State v. Dickerson*, 313 N.W.2d 526, 529 (Iowa 1981). Once the legal adequacy of the corroborating evidence is established, the sufficiency of the evidence is for the jury. *State v. Brown*, 397 N.W.2d 689, 695 (Iowa 1986). Because Bugely challenges the trial court's determination that corroborating evidence existed to warrant submission of these cases to the jury, our review is for correction of errors of law. *See* Iowa R.App. P. 4. We view all the evidence in the light most favorable to the State, even if contradicted, and indulge in every legitimate inference that may be fairly and reasonably deduced from this evidence. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980); *State v. Cuevas*, 281 N.W.2d 627, 629 (Iowa 1979).

Corroborative evidence may be direct or circumstantial. *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa 1976). It "need not be strong and need not be entirely inconsistent with innocence." *Dickerson*, 313 N.W.2d at 529. It must, however, support some material part of the accomplice's testimony and tend to connect the accused to the commission of the crime. *Brown*, 397 N.W.2d at 695; *Vesey*, 241 N.W.2d at 890. We now consider whether corroborating evidence existed with respect to the Ripp burglary and the Twin Anchors burglaries.

### B. *Ripp burglary.* "A defendant's possession of property stolen in the alleged offense is corroborative evidence." *Dickerson*, 313 N.W.2d at 529. Here, two witnesses in addition to the accomplice, Johnson's and Bugely's then-girlfriends, testified Bugely possessed a ruby ring taken from the Ripp residence within one-half hour after the burglary. This evidence is corroborative. Although Bugely argues he had an innocent explanation for his possession of this property (Johnson gave him the ring), that testimony went to the *sufficiency* of the corroborating evidence—a question for the jury. It does not detract from the *existence* of the corroborating evidence. *See Cuevas*, 281 N.W.2d at 631 (holding court does not assess the strength of the corroborative evidence; that is for the jury). Therefore the trial court did not err in overruling Bugely's motion for judgment of acquittal on the Ripp burglary. *See Dickerson*, 313 N.W.2d at 530 (holding trial court properly overruled defendant's motion for judgment of acquittal where corroborating evidence existed).

### C. *Twin Anchors burglaries.* The issue of corroboration is more complex in the Twin Anchors case, but we conclude corroboration exists. Johnson testified Bugely participated in the Twin Anchors burglaries. The existence of a second, small set of foot-

prints at these burglaries confirm that a second person was involved. These prints, which match those present at the Ripp residence, show the same person who committed the Ripp burglary was present at the Twin Anchors burglaries. Bugely's possession of the ruby ring independently links him to the Ripp burglary. Because the physical evidence showed only two thieves were present at the Ripp residence and independent evidence supports a finding Bugely was one of them, then the small, matching footprints at the Twin Anchors burglaries is independent evidence that Bugely was present at Twin Anchors also. Thus, the small footprints at the Twin Anchors sites, identified by independent evidence as belonging to Bugely, constitute corroborating evidence of Bugely's involvement in the Twin Anchors burglaries. The trial court correctly determined evidence corroborating the accomplice's testimony existed.

■ The cases upon which Bugely relies to challenge the trial court's decision are distinguishable. Bugely cites the *Dickerson* case, which held that in a joint trial of two defendants the testimony of an accomplice must be corroborated as to each defendant. *Dickerson*, 313 N.W.2d at 530. Bugely claims the fortuity of a trial on consolidated charges, like the fortuity of the joint trial in *Dickerson*, should not allow the State to prove corroboration in a manner not available to it had the cases not been consolidated. The flaw in Bugely's argument is his assumption the evidence of the matching footprints at the Ripp burglary would not have been admissible in a separate trial of the Twin Anchors charges.

■ Although Iowa Rule of Evidence 404 prohibits evidence of other crimes, such evidence is admissible if offered to prove identity. Iowa R. Evid. 404(b); *State v. Uthe*, 542 N.W.2d 810, 814 (Iowa 1996). When evidence of other crimes is relevant and the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, evidence of other crimes is admissible. *Uthe*, 542 N.W.2d at 814. We think the matching footprints at the Ripp residence are highly probative of the perpetrator of the burglaries at Twin Anchors. Moreover, the

relevant nature of this evidence outweighs its prejudicial quality. Consequently, it would have been well within the district court's discretion to admit this evidence even if the Twin Anchors case had not been consolidated with the Ripp case. *See id.* (holding trial court did not abuse its discretion in admitting highly probative and relevant evidence of other crimes). Thus, the State did not have an unfair advantage by trying the Ripp case and the Twin Anchors case together.

Bugely also relies on *State v. Fletcher*, 246 Iowa 452, 68 N.W.2d 99 (1955). In that case, the defendant was found in possession of two hammers and a satchel. *Fletcher*, 246 Iowa at 455, 68 N.W.2d at 100. The court held this evidence did not corroborate an accomplice's testimony the defendant participated in a burglary. *Id.* at 460, 68 N.W.2d at 103. The court noted the items the defendant possessed were connected to the burglary only through the accomplice's testimony that the hammers and the satchel were used during the commission of the crime. *Id.* at 457, 68 N.W.2d at 101. In contrast, here the ruby ring connected Bugely to the Ripp burglary through the testimony of two independent witnesses. Thus, *Fletcher* is factually distinguishable from the present case.

Finally, Bugely relies on a North Dakota case involving one defendant and five burglaries. *See State v. Haugen*, 449 N.W.2d 784 (N.D.1989). In *Haugen*, an accomplice testified at trial the defendant was the driver and lookout during the five burglaries. *Id.* at 785. Independent evidence corroborated the accomplice's testimony as to three of the burglaries. *Id.* at 786–87. The State sought to corroborate the accomplice's testimony as to the fourth burglary through evidence the pry marks found at that location were similar to pry marks found at the other burglaries. *Id.* at 787. The court rejected this evidence noting that while it tended to establish a similar mode of entry, it did not connect the defendant to the burglary. *Id.* at 788. With respect to the fifth burglary, the State offered evidence that police saw the defendant's vehicle in the vicinity of the burglary shortly before it occurred; the police could not identify the occupants of the vehicle. *Id.* The court rejected the State's argument the

court could infer from this testimony that the defendant was present with the accomplice right before the break-in, thus connecting him to the crime. *Id.* at 788–89. The present case differs from *Haugen* in a material respect. In *Haugen,* there was no evidence connecting the defendant, as opposed to his vehicle, to the offense. In contrast, the corroborating evidence here—a footprint independently linked to Bugely—placed Bugely at the scene of the crime. This evidence shows a much closer and direct link of the defendant to the offense than did the corroborating evidence offered in *Haugen.*

### III. *Ineffective-Assistance-of-Counsel Claim.*

Bugely's ineffective-assistance-of-counsel claim arises from the testimony of a rebuttal witness called by the State. During the State's case, Bugely's former girlfriend, Stacey Parks, testified she ended her relationship with Bugely because he had not been truthful about his background. She related a story he had told her about having a wife and child who were killed in a traffic accident. Parks testified Bugely told her he was a paramedic at the time and he learned of the accident when he prepared to respond to the call for assistance. Bugely took the stand in response and testified he was a trained and licensed paramedic from 1979 to 1981.

On rebuttal, the State called a witness from the Iowa Department of Public Health. Bugely's attorney objected to the witness's testimony on grounds of competency to testify concerning records that existed in the 1970s. The court overruled this objection and the department witness testified Bugely's name did not appear on the department's records of registered emergency medical assistance providers, a list that includes paramedics. On cross-examination, the witness admitted the department's records only went back to 1980. Bugely claims on appeal his attorney should have objected to this testimony as "improper impeachment by extrinsic evidence."

A defendant receives ineffective assistance of counsel when (1) the defense attorney fails in an essential duty and (2) prej-

udice results. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Brooks,* 555 N.W.2d 446, 448 (Iowa 1996). We review claims of ineffective assistance of counsel de novo. *Brooks,* 555 N.W.2d at 448.

We find it unnecessary to consider whether Bugely's trial attorney should have made the objection Bugely urges on appeal or whether such an objection would have been sustained. Even if defense counsel should have prevented the testimony of the rebuttal witness, we conclude Bugely has not satisfied the second prong of his claim—prejudice.

To prove prejudice, the defendant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gering v. State,* 382 N.W.2d 151, 153 (Iowa 1986). A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the defendant's trial. *State v. Kraus,* 397 N.W.2d 671, 673 (Iowa 1986). We think there is not a reasonable probability the testimony of the rebuttal witness affected the outcome of the trial because her testimony was cumulative.

We first observe the rebuttal witness did not totally refute Bugely's testimony he had been a licensed paramedic from 1979 to 1981 because the department's records did not go back to 1979. More important, however, is the existence of even more damaging evidence with respect to Bugely's credibility: the source of a television found during a search of his apartment. The State contended the television was stolen during the Black & Sons burglary. Four employees of Black & Sons identified the television and an expert witness testified someone had attempted to alter the serial number on the television.

Bugely testified he had purchased the television and some furniture from a private party, Monica Madeiros, who had advertised these items for sale before moving out of state. In rebuttal, the State called Madeiros as a witness. Madeiros had moved from Ames to Bermuda, but she returned to testify at Bugely's trial. She said she had never owned the television in question and did not

sell a television before she moved. An Ames neighbor of Madeiros confirmed that Madeiros did not own such a television and had not sold one prior to moving. Bugely obviously did not anticipate the State would find Madeiros in Bermuda and bring her back to Iowa for the trial.

We agree with the State that any negative impact the paramedic evidence had on Bugely's credibility pales in comparison to the television evidence. Consequently, even if trial counsel breached an essential duty in not preventing the department witness from testifying, there was no prejudice. The probative force of her testimony was reduced by defense counsel's cross-examination. Moreover, any credibility Bugely had was destroyed by the rebuttal witnesses who testified on the stolen television issue.

IV. *Conclusion.*

The testimony of the accomplice was corroborated by independent evidence linking Bugely to the burglaries. Therefore, the trial court did not err in denying Bugely's motion for judgment of acquittal. Bugely failed to prove his ineffective-assistance-of-counsel claim because he did not show he was prejudiced by trial counsel's alleged shortcomings.

**AFFIRMED.**