# IN THE COURT OF APPEALS OF IOWA

No. 17-0111
Filed August 15, 2018

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**ALBERT GARCIA,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.


　　　　Albert Garcia appeals his convictions for two counts of first-degree murder and two counts of first-degree robbery. **AFFIRMED.**


　　　　Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.


　　　　Heard by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Three men hatched a plan to rob a person who was seeking to buy marijuana from one of them. They enlisted the help of Albert Garcia because they knew Garcia had a gun. Garcia ended up shooting the would-be marijuana purchaser and his friend. Both died.

The State charged Garcia with two counts of first-degree murder, in violation of Iowa Code sections 707.1 and 707.2 (2015), and two counts of robbery in the first degree, in violation of sections 711.1 and 711.2. A jury found him guilty as charged, and the district court sentenced him to two terms of life imprisonment without the possibility of parole and two prison terms not exceeding twenty-five years. The sentences were to run consecutively.

On appeal, Garcia contends (1) a police detective lacked the qualifications to provide expert testimony about cell phone technology; (2) accomplice testimony was not corroborated by sufficient evidence; (3) his trial attorney was ineffective in failing to object to an instruction informing the jury it could consider his out-of-court statements "just as if they had been made at trial"; and (4) his murder convictions and sentences should be vacated under a merger doctrine.

## I.  *Expert Testimony–Cell Phone Technology*

At trial, the prosecutor asked a Des Moines police detective to pinpoint the locations of a cell phone belonging to one of the participants in the crimes, based on cell tower information. The detective testified the locations were near the crime scene. The prosecutor then asked about the locations of Garcia's cell phone. After the detective identified the locations, the prosecutor engaged in the following exchange about cell phone tower technology:

> Q. Generally speaking based upon your training and experience, how do cell phones connect to particular towers? A. When it's trying to get a signal, it goes to whatever the clearest closest tower is. If you start a call and you are traveling, it will sometimes switch towers from one to another. A lot of times if you have a lengthy phone call, it will connect to multiple towers.

At this juncture, Garcia's attorney objected to the testimony on the ground the detective was not "certified as an expert in cell phone technology." The district court overruled the objection and the detective continued: "Essentially it connects to the closest tower and communicates with whatever the closest tower is that it can communicate with."

Garcia contends, "Testimony about cellular phone technology and the use of cell tower data to estimate the location of a cell phone is technical, specialized information that is beyond the understanding of the average lay person and properly the subject of expert testimony." In his view, the detective was unqualified to testify about "location based on the cellphone tower records because the State presented no evidence of [the detective's] experience or knowledge in the area of cell phone technology."

The State responds with several error preservation concerns. We agree with the State that Garcia's objection to the question quoted above came too late and he failed to object to other testimony about cell phone technology. Accordingly, he did not properly preserve error. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Anticipating this conclusion, Garcia asserts his attorney "was ineffective for failing to object in a timely or sufficiently specific manner." The State responds

that his assertion is too general to permit review of his claim under an ineffective-assistance-of-counsel rubric. We disagree with the State and proceed to the merits.

To prevail on a claim of ineffective assistance of counsel, Garcia must show deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the breach prong, there is a strong presumption that the attorney's actions were reasonable. *State v. Shumpert*, 554 N.W.2d 250, 254 (Iowa 1996). The prejudice prong requires proof by "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008). We may decide the issue on either prong. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element."). We find the record adequate to address the breach prong. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("If a defendant wishes to have an ineffective-assistance claim resolved on direct appeal, the defendant will be required to establish an adequate record to allow the appellate court to address the issue.").

"A witness is qualified to assist the jury as an expert to resolve a disputed fact if the witness has adequate 'knowledge, skill, experience, training, or education' on the subject matter in question." *Ranes v. Adams Laboratories*, *Inc.*, 778 N.W.2d 677, 687 (Iowa 2010) (quoting Iowa R. Evid. 5.702). "[A]n expert does not need to be a specialist in the area of the testimony as long as the testimony is within the general area of expertise of the witness." *Id.*; *see also State v. Benson*, No. 15-1895, 2016 WL 7393891, at *3 (Iowa Ct. App. Dec. 21, 2016)

(concluding a detective "possessed sufficient knowledge and training to assist the jury in interpreting . . . cell phone records"); *State v. Rendon*, No. 15-1832, 2016 WL 6270092, at *4 (Iowa Ct. Oct. 26, 2016) (concluding detective "had sufficient knowledge, skill, experience, and training to interpret the cell phone records and to assist the jury in understanding those records").

The detective in this case testified he had fifteen years of experience as a police officer, including ten years as a patrol officer on the streets of Des Moines. He "attended several homicide conferences and training classes throughout [his] five years" as a detective. Before discussing specific cell phone records, he was asked, "Have you had an opportunity in the past to interpret cellular telephone records in other criminal investigations?" He answered, "Yes." Later, he was asked about a particular cell phone record and whether "we have the benefit of cell tower information as well." The detective responded, "Yes, we do," and he explained that information was somewhat unique to the particular provider. He expressed his awareness that general location data was available "during cell calls, not texts."

The detective's training and experience qualified him to testify that cell phones communicated with "the closest tower" and "[t]he cell phone will simply go to whatever the nearest tower it is or whatever is the clearest signal it can pick up." On our de novo review, we conclude Garcia's attorney did not breach an essential duty in failing to timely or more specifically object to the testimony. His ineffective-assistance-of-counsel claim fails.

## II.     *Corroboration of Accomplice Testimony*

The three men who came up with the plan to rob the marijuana purchaser implicated Garcia and testified against him at trial. Garcia contends their testimony was insufficiently corroborated. *See* Iowa R. Crim. P. 2.21(3) (requiring corroboration of accomplice testimony). Corroborative evidence "may be direct or circumstantial," and it "need not be strong and need not be entirely inconsistent with innocence." *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997) (citation omitted). "It must, however, support some material part of the accomplice's testimony and tend to connect the accused to the commission of the crime." *Id.*

Accomplice Shamair Gainey testified Garcia "shot" the person they intended to rob, and Garcia then "started shooting" the purchaser's friend.

Accomplice Roberto Baez-Alvarez testified the man who wished to purchase marijuana had $250 to spend. He and the other accomplices came up with a plan to rob him of the money and drove the purchaser to an alley. Garcia approached the vehicle. The purchaser demanded to see the marijuana before paying Garcia. After deliberating a short while, Garcia said, "You know what?" and "shot" the purchaser "once." Baez-Alvarez heard another shot. After the shot, the purchaser's friend "took off running," with Garcia in pursuit. Baez-Alvarez pulled the purchaser's body out of the vehicle and left him on the ground. Later, Baez-Alvarez attempted to clean the vehicle with bleach and paper towels.

According to accomplice Luis Magallon, Garcia told him "I'm going to shoot" the purchaser and his friend if they "don't give me the money." Magallon walked away. As he did so, he heard "five or six" gunshots coming from the alley. Later, he met up with Garcia, who was "pouring sweat" and told him he "did it."

The testimony of the three accomplices was corroborated by extensive evidence. Officers obtained the vehicle owner's consent to search the vehicle in which the shooting occurred. One of the detectives observed "what appeared to be a dark red stain in the seat which would be consistent where somebody would be sitting" and "what appeared to be blood on the door." The DNA profiles obtained from the blood in the vehicle "matched the known DNA profile" of the marijuana purchaser. The detective also saw "a balled-up paper towel that had some sort of red evidence on it." A bottle of bleach was in the vehicle. The detective viewed a surveillance video from a convenience store "a block and a half" from the crime scene and identified Garcia and Magallon going into the store "at the approximate time frame" identified in police interviews.

Garcia was interviewed by police. He changed his story as police confronted him with information contradicting his initial version of events. *See State v. Harris*, 589 N.W.2d 239, 242 (Iowa 1999) (stating courts can "also consider as corroborating evidence the fact that when defendant was interrogated by the police he gave false and misleading evidence concerning his whereabouts"). Initially, he said he did not see Magallon on the night of the shootings. After being informed that a convenience store video showed him with Magallon, he backtracked. He also identified an alibi witness, but when she failed to corroborate the alibi, he altered the narrative.

After being arrested and jailed, Garcia made incriminating statements in recorded phone conversations. *See State v. Douglas*, 675 N.W.2d 567, 572 (Iowa 2004) ("[A] defendant's out-of-court confessions and admissions may corroborate the testimony of an accomplice."). They included, "I'm probably going away for a

long, long time"; "When I get sentenced and go to prison, I might call and tell you why"; and "I'm probably never going to see the outside world again."

Finally, cell phone records contained communications between Garcia and the accomplices and among the accomplices. And, as noted, location data from the cell phone towers placed the accomplices near the scene of the crime.

We conclude there was more than sufficient evidence to corroborate the accomplice testimony.

## VI.	*Ineffective Assistance–Jury Instruction, Defendant's Prior Statements*

Garcia contends his trial attorney was ineffective in failing to object to an instruction that informed the jury it could consider his out-of-court statements "just as if they had been made at trial." According to Garcia,

> While the rules of evidence provide that statements of party opponents are admissible, the rule of evidence and the rationale underlying the hearsay exception provides no authority to require the jury to consider the statements as bearing the same weight as testimony received at trial, made under oath and under penalty of perjury. Instead the jury should have been free to assign whatever weight and reliability to the statements as it saw fit.

We recently addressed the identical issue. *See State v. Yenger*, No. 17-0592, 2018 WL 3060251, at *4-5 (Iowa Ct. App. June 20, 2018). We stated:

> Although the challenged instructional language does not appear in rule 5.801(d)(2), we believe it is a correct statement of the law. . . . [T]he language allows rather than requires the jury to consider the statements "just as if they had been made at this trial." . . . Because the challenged language does not require jurors to accord the same weight to an unsworn prior inconsistent statement as they would to trial testimony, we conclude Yenger's attorney breached no essential duty in failing to object to that portion of the instruction. *See* [*State v.*] *Payne*, [No. 16-1672,] 2018 WL 1182624, at *9 [(Iowa Ct. App. Mar. 7, 2018)] ("The instruction did not direct the jury to assign the statement any particular weight or unduly emphasize the matter, nor did it create an improper permissive inference or presumption."); *see also State v. Hayes*, No. 17-0563, 2018 WL 2722782, at *5 (Iowa Ct.

App. June 6, 2018) (concluding counsel was not ineffective in failing to challenge this instruction); *State v. Wynn*, No. 16-2150, 2018 WL 769272, at *3 (Iowa Ct. App. Feb. 7, 2018) (noting instruction made "no reference to a presumption or an inference"); *State v. Wineinger*, No. 16-1471, 2017 WL 6027727, at *3 (Iowa Ct. App. Nov. 22, 2017) (concluding instruction was "a correct statement of law"); *State v. Tucker*, No. 13-1790, 2015 WL 405970, at *3 (Iowa Ct. App. Jan. 28, 2015) (disagreeing with assertion that the instruction was misleading).

We are persuaded by the reasoning of *Yenger* and the remaining cited opinions. We conclude counsel did not breach an essential duty in failing to object to the instruction.

## IV.  *Merger–Felony Murder Instruction*

Garcia contends his "sentences and convictions for murder are illegal and must be vacated" because (1) the jury "was never instructed on the requirement . . . that the assaultive act that forms the basis of the predicate felony must be separate and distinct from the act causing death" and (2) "the jury did not make findings that the act constituting the assaultive elements of the robbery convictions in Counts III and IV were separate and distinct acts from the shootings that supported the felony murder options in Counts I and II." In his view, "the murder convictions and sentences must be vacated, as the jury's general verdict forms do not indicate whether it found [him] guilty of premeditated murder or felony murder."

The State counters that Garcia "is not truly challenging the legality of his sentence," but the "marshalling instructions for his murder charges," an issue he failed to preserve for our review. We agree.

"Objections to instructions, or the lack thereof, may not be raised for the first time on appeal." *State v. Wellington*, 264 N.W.2d 739, 742 (Iowa 1978); *cf. State v. McCoy*, No. 14-0918, 2016 WL 3269458, at *4 (Iowa Ct. App. June 15,

2016). ("We agree this is a challenge to the jury instructions, and we agree the defendant failed to preserve error."). Garcia did not object to the instruction and does not raise a challenge to the instruction under an ineffective-assistance-of-counsel rubric. Accordingly, we have nothing to review.[1]

We affirm Garcia's judgment and sentences.

**AFFIRMED.**

Tabor, J., concurs specially; Potterfield, J., joins special concurrence.

---

[1] The Iowa Supreme Court recently rejected the argument. *See State v. Harrison*, 914 N.W.2d 178, 208 (Iowa 2018) ("Based on the fundamental differences between felony robbery and felony assault in the felony-murder context, in addition to the merger rule jurisprudence in Iowa, it can hardly be said that trial counsel in this case "performed below the standard demanded of a reasonably competent attorney."); *see also McCoy*, 2016 WL 3269458, at *4-7; *State v. Pollard*, No. 13-1255, 2015 WL 405835, at *3-4 (Iowa Ct. App. Jan. 28, 2015).

**TABOR, Judge** (concurring specially).

I agree with the majority's decision to affirm Garcia's convictions, but I disagree with two aspects of the analysis. For both claims of ineffective assistance of counsel raised on appeal, I would find a breach of duty, but no prejudice.

First, the State did not establish that the police detective received relevant training in cellular telephone technology or that his general experience as a patrol officer or detective would allow him to provide expert testimony regarding the use of cell tower data. To satisfy minimum performance standards, defense counsel should have lodged an earlier objection to the officer's testimony about specialized information that was beyond a layperson's understanding. *See generally State v. Carrillo*, 399 P.3d 367, 376 (N.M. 2017) ("[U]nderstanding how cell towers operate requires a duly qualified expert to explain the technical nature of the many variables that influence how cell tower signals connect with cell phones."). In both *State v. Rendon*, No. 15-1832, 2016 WL 6270092, at *4 (Iowa Ct. App. Oct. 26, 2016), and *State v. Benson*, No. 15-1895, 2016 WL 7393891, at *3 (Iowa Ct. App. Dec. 21, 2016), the question was whether a detective's training from 2008 to 2012 was up-to-date, not whether he had received *any* training on cellular phone technology. Here, the State laid no foundation that the detective had specific knowledge regarding the operation of cell phone towers. He testified he attended conferences and classes on homicides generally—not specifically about how cellular towers work or how to read cellular telephone records. The officer's subsequent testimony that he had the "opportunity in the past to interpret cellular telephone records" in the course of investigations does not answer the question of how he was qualified to do so then or now.

Second, counsel had a duty to object to the jury instruction regarding Garcia's extrajudicial statements. The district court instructed the jurors that if they found Garcia made statements at an earlier time and place, they were allowed to consider those out-of-court statements as part of the evidence—"just as if they had been made at this trial." Although our court has upheld this stock instruction in several unpublished decisions, the disputed language cannot be found in the rules of evidence. In my view, the instruction improperly suggests Garcia's out-of-court admissions were to be given the same force and effect as if he had uttered the words from the witness stand under the penalty of perjury. *See State v. Yenger*, No. 17-0592, 2018 WL 3060251, at *7 (Iowa Ct. App. June 20, 2018) (Tabor, J., dissenting); *State v. Payne*, No. 16-1672, 2018 WL 1182624, at *11–12 (Iowa Ct. App. Mar. 7, 2018) (Tabor, J., dissenting).

But on the question of *Strickland* prejudice, in neither instance can Garcia show the reasonable probability of a different outcome based on counsel's omissions. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). As the State asserts on appeal, the detective's testimony concerning the cellular tower information was just "one piece of the puzzle" amid overwhelming evidence of Garcia's guilt. Similarly, it is not reasonable to believe the result of the trial would have been different if the court had not given the disputed instruction. *See State v. Kissel*, No. 16- 0887, 2017 WL 6032585, at *5 (Iowa Ct. App. Nov. 22, 2017) (finding no prejudice from same jury instruction); *State v. Chinberg*, No. 16-1600, 2017 WL 6026718, at *2 (Iowa Ct. App. Nov. 22, 2017) (same). Garcia's out-of-court statements—in the form of recorded telephone calls from jail and a videotaped interview with officers—were not the most incriminating evidence

before the jury. The prosecution presented a strong case. Garcia's three accomplices testified he pulled the trigger, surveillance videos placed him near the crime scene within minutes of the shooting, and he possessed the proceeds from the robbery. On this record, I don't find counsel's errors undermined confidence in the jury's verdicts. I would find counsel breached an essential duty, but Garcia was not prejudiced. Therefore, I specially concur in the result affirming denial of Garcia's claims.