# IN THE COURT OF APPEALS OF IOWA

No. 21-0414
Filed June 15, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**GERALD STEVEN PARKER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Madison County, Michael Jacobsen, Judge.

A defendant appeals his conviction for first-degree murder and first-degree robbery, claiming a lack of evidence corroborating the testimony of a witness who he contends was an accomplice and that the district court abused its discretion in denying his motion for a new trial. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller and Thomas J. Ogden, Assistant Attorneys General, for appellee.

Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Gerald Parker appeals his conviction for first-degree murder and first-degree robbery.  Parker asserts a lack of evidence corroborating the testimony of a witness he contends was an accomplice.  He also argues the district court abused its discretion in denying his motion for a new trial by concluding the verdict was not contrary to the weight of the evidence.  We find the witness was not an accomplice, but even if she was an accomplice, there was sufficient evidence to corroborate her testimony.  We find no abuse of discretion in the district court's determination that the verdict was not contrary to the weight of the evidence.  Accordingly, we affirm.

I.      **Background Facts & Proceedings**

Based on testimony and exhibits received at trial, a reasonable jury could conclude the following.  Parker met Elizabeth Clayton in January 2020 due to their mutual involvement in drug use, mainly methamphetamine.  They began living together in Creston and had a "really rocky" relationship.  Parker paid Clayton's bond after she was arrested for probation violations in June 2020.  Parker expected Clayton to repay him for the roughly $2000 he posted for her bond.  Clayton sold drugs to repay Parker.

Parker and Clayton met with Gonzales, a drug dealer from Des Moines, around July 15 to buy methamphetamine.  Gonzales left with their money, about a thousand dollars, and did not return.  Parker blamed Clayton.  He pointed a pistol in her face and threatened her.  Because of Parker's threats, Clayton moved out of his apartment.

Gonzales heard about Parker's response to the theft and reached out to Clayton. He offered to give her back the money or an equivalent amount of drugs. On July 19, Clayton obtained a ride from a friend to Des Moines, as she did not have her own vehicle. She received $100 from Gonzales. Clayton traveled back to Des Moines the next day, the same friend providing a ride. This time, Gonzales introduced Clayton to Jonathan Hoffman, who had drugs to sell. Gonzales offered to forgo payment as the middleman, which allowed both Clayton and Hoffman to retain a larger percentage of the anticipated drug sales.

Later that day, Hoffman contacted Clayton for a ride out of town because he had been assaulted. Both agreed Hoffman should go to Creston to sell drugs using Clayton's contacts. Clayton asked her friends to provide a ride for Hoffman. Clayton also spoke to at least one person about providing Hoffman a place to stay while Hoffman was in Creston. Clayton's requests were ignored. Parker contacted Clayton in the early hours of July 21 and expressed a desire to renew their relationship. Lacking any other options, Clayton asked Parker to pick-up Hoffman in Des Moines.

Video footage from the home of Hoffman's girlfriend shows Hoffman left around three in the morning on July 21. He brought along a black and white Adidas backpack. Clayton and Parker picked Hoffman up sometime in the afternoon and began driving to Creston. Parker drove both Clayton and Hoffman in his pickup. Clayton testified Parker never let anyone else drive his truck, although she indicated she had driven such on occasion. Clayton sat in the front passenger seat and Hoffman sat in the back. Parker drove toward Creston on back roads.

Upon arriving near an intersection in Madison County, Parker asked Hoffman if he wanted to drive. Hoffman agreed. While crossing each other in front of the truck, Parker began firing a gun at Hoffman. Hoffman was shot in the head, abdomen, back, and legs. He died from these injuries.

After firing the shots, Parker returned to the vehicle and threatened to kill Clayton if she spoke to anyone about what happened. He reversed the vehicle and drove away, leaving Hoffman face down on the road. Parker broke Hoffman's phone, removed the SIM card, and threw the phone over a bridge. After returning to his apartment, Parker searched Hoffman's bag. He found about two ounces of methamphetamine. Parker and Clayton went shopping for clothes for Clayton following the shooting.

A passing vehicle discovered Hoffman's body and alerted law enforcement. Thirteen cartridges were found at the scene, likely fired from the same handgun. Tire tracks that could have come from Parker's vehicle were also discovered near Hoffman's body.

In the days after the shooting, Clayton and Parker began selling methamphetamine together. Such sales included one of Clayton's friends. That friend testified that the sale seemed like a ploy to get her to visit. Upon her arrival, Clayton informed her that Parker had shot Hoffman. Clayton was "totally freaked out" and asked for a ride out of town. The friend initially did not believe Clayton, but later called the police and told them what Clayton had relayed to her.

On July 29, law enforcement arrived at Parker's apartment, looking for Clayton. Parker informed the officers that Clayton was not present, although she was in a separate room in the apartment speaking telephonically to her probation

officer. The officers took Parker to a law enforcement center and interviewed him for about an hour. He denied any knowledge of Hoffman or his death. After returning to his apartment, Parker told Clayton to deny knowing Hoffman and to ignore the police. He again threatened to kill her if she spoke about the shooting.

Law enforcement later picked up Clayton for questioning. At first, Clayton denied knowing anything about Hoffman or Gonzales. After the officers asked about her own drug use, Clayton ended the interview. One of the officers offered to drive her back to Parker's apartment. Because of her fear of Parker, Clayton elected to tell the officers what she knew, implicating Parker in the murder. Clayton stated she had seen the gun used in the shooting before. While she initially did not identify the type of gun, she later stated it was a Beretta pistol. Law enforcement obtained and executed a search warrant at Parker's residence and his truck that same day. They found a gun cleaning kit in his safe, although Parker denied owning a gun. They also found Hoffman's backpack in a lockbox in the back of Parker's truck. The backpack was in a plastic bag from the store where Parker and Clayton shopped after the shooting. The backpack had Hoffman's DNA on it. No DNA or fingerprints from Hoffman, Clayton, or Parker were located inside Parker's truck.

Parker was charged with first-degree murder, in violation of Iowa Code sections 707.1 and 707.2(1) (2020), on August 5. The State later amended the trial information to include robbery in the first degree, in violation of section 711.1(1) and 711.2. Trial commenced February 2, 2021. The district court included a jury instruction, as urged by Parker, on the evidence necessary to

support a conviction if the jury determined Clayton was an accomplice.[1] The jury found Parker guilty on both counts on February 9. Parker appeals.

## II.     Standard of Review

We review claims challenging the sufficiency of corroborating evidence for correction of errors at law. *State v. Bugley*, 562 N.W.2d 173, 176 (Iowa 1997). "We view all the evidence in the light most favorable to the State, even if contradicted, and indulge in every legitimate inference that may be fairly . . .deduced from [the] evidence." *Id.*

"We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). An abuse of discretion occurs when the "court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). "A verdict is contrary to the weight of the evidence where 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (quoting *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998)). Our review is "limited to a review of the exercise of

---

[1] Instruction Number 15 reads:

> An "accomplice" is a person who knowingly and voluntarily cooperates or aids in the commission of a crime. A person cannot be convicted only by the testimony of an accomplice. The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the crime. If you find Elizabeth Clayton is an accomplice, the defendant cannot be convicted only by that testimony. There must be other evidence tending to connect the defendant with the commission of the crime. Such other evidence, if any, is not enough if it just shows a crime was committed. It must be evidence tending to single out the defendant as one of the persons who committed it.

discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203.

## III. Discussion

Parker alleges there is insufficient evidence to corroborate Clayton's testimony as an accomplice. He also challenges the weight of the evidence.

### A. Sufficiency of Corroborating Evidence

Parker claims there is insufficient evidence to corroborate an accomplice's testimony. *See* Iowa R. Crim. P. 2.21(3). To analyze his claim, we must make two determinations: (1) Whether Clayton was an accomplice, and, if she was, (2) whether there is sufficient corroborating evidence for her testimony.

#### 1. Accomplice Test

Our supreme court has succinctly explained the test to determine whether an individual is an accomplice:

> We have defined an accomplice as a person who willfully unites in, or is in some way concerned in the commission of a crime. In general, a person is an accomplice if he or she could be charged and convicted of the same offense for which the defendant is on trial. It is not enough, however, to show mere knowledge of the contemplation of a crime or mere presence at the time and place of the crime; it must be established by a preponderance of the evidence the witness was in some way involved in the commission of the crime.

*State v. Barnes*, 791 N.W.2d 817, 823 (Iowa 2010) (internal citations and quotation marks omitted).

We determine there was insufficient evidence offered at trial to prove by a preponderance of the evidence that Clayton was an accomplice.[2] While it is true that Hoffman was only in Parker's truck because he knew Clayton, there is a lack of evidence that Clayton intended to murder and rob him. Instead, uncontested evidence from Clayton and Gonzalez suggested that Clayton intended to work with Hoffman to sell drugs in Creston. Clayton reached out to a friend asking if Hoffman could stay at the friend's residence while he was in Creston. Such a request is inconsistent with Clayton knowing about or participating in the murder and robbery. Mere presence at the murder is insufficient. As the district court noted, "At best, . . . Ms. Clayton could have been an accessory after the fact." In the absence of any evidence to the contrary, we find Clayton was not an accomplice.[3]

---

[2] Parker's briefing does not explain how Clayton was an accomplice. Instead, he merely notes, "The parties argued over whether the jury should be instructed that [Clayton] was an accomplice."

[3] We note that Iowa Rule of Criminal Procedure 2.22(1) mandates that

> [t]he jury must render a verdict of 'guilty,' which imports a conviction, or 'not guilty,' 'not guilty by reason of insanity,' or 'not guilty by reason of diminished responsibility,' which imports acquittal, on the charge. The jury shall return a verdict determining the degree of guilt in cases submitted to determine the grade of the offense.

Rule 2.22(2) requires that the jury must also return with the general verdict answers to "special interrogatories submitted by the court upon its own motion, or at the request of the defendant in prosecutions where the defense is an affirmative one, or it is claimed any witness is an accomplice, or there has been a failure to corroborate where corroboration is required." We do not have the benefit of knowing whether the jury determined Clayton was an accomplice, as the jury was not provided a special interrogatory. This issue, however, was not raised by either party or preserved for our review.

## 2. Corroboration of Accomplice Testimony

Even assuming Clayton was an accomplice, her testimony was sufficiently corroborated to uphold Parker's conviction. Iowa Rule of Criminal Procedure 2.21(3) provides,

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"Corroboration 'need not be strong and need not be entirely inconsistent with innocence. . . . The requirement of corroborative evidence is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime.'" *State v. Mathews*, No. 16-0973, 2017 WL 3283289, at *3 (Iowa Ct. App. Aug. 2, 2017) (alteration in original) (quoting *State v. Ware*, 338 N.W.2d 707, 710 (Iowa 1983)); *see also Barnes*, 791 N.W.2d at 824 ("Corroborative evidence need not be strong as long as it can fairly be said that it tends to connect the accused with the commission of the crime and supports the credibility of the accomplice." (citation omitted)). Corroborating evidence may be direct or circumstantial. *Bugley*, 562 N.W.2d at 177.

Clayton's testimony was corroborated in several respects. First, tire tracks that may have been formed by the defendant's truck were found at an intersection matching Clayton's description of the crime scene.[4] Testimony from Clayton's friend revealed that Clayton told her about the crime the day after it occurred, that

---

[4] Testimony from an employee of the Division of Criminal Investigation (DCI) Crime Laboratory indicated that the tire tracks could have been made by the defendant's truck or another truck or SUV with the same style of tires.

Clayton was afraid, and was trying to get away from Parker. Such matched Clayton's testimony that Parker was threatening her. One of Parker and Clayton's acquaintances testified that Parker owned a gun. The testimony tracks with Clayton's testimony that Parker owned a gun—it also is supported by the gun cleaning kit found in Parker's safe. Additionally, a criminalist with DCI testified that the cartridges found at the scene were fired by either a Berretta or Taurus, which coincides with Clayton's testimony that Parker owned a Berretta pistol. Finally, Hoffman's backpack was found in a shopping bag in Parker's lockbox in the bed of his truck. This connects Parker to the crime and supports Clayton's version of events, which included a trip to the same store as the bag containing Hoffman's backpack.

Taken together, the evidence corroborates Clayton's testimony and ties Parker to the commission of the crime—the tire tracks place him at the crime scene, the victim's bag was found in a locked compartment of his truck, Parker owned the type of gun that could have been used in the murder, and Clayton's conduct immediately after the murder implicating Parker was observed by other witnesses. Clayton's testimony is supported by the record.

### B. Motion for New Trial

Parker alleges the verdict was contrary to the weight of the evidence. Iowa Rule of Criminal Procedure 2.24(2)(b)(6) permits a district court to grant a motion for new trial when a verdict is contrary to the weight of the evidence. A verdict is contrary to the weight of the evidence only when "a greater amount of credible evidence supports one side of an issue or cause than the other." *Shanahan*, 712 N.W.2d at 135 (quoting *Ellis*, 578 N.W.2d at 658). The weight-of-the-evidence

standard requires the district court to consider whether more "credible evidence" supports the verdict rendered than supports the alternative verdict. *Ellis*, 578 N.W.2d at 658–59. (citation omitted)

This standard is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). But it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered. *Nguyen v. State*, 707 N.W.2d 317, 327 (Iowa 2005). The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict but whether "a greater amount of credible evidence" suggests the verdict rendered was a miscarriage of justice. *Ellis*, 578 N.W.2d at 658–59. A district court may invoke its power to grant a new trial on the ground the verdict was contrary to the weight of the evidence only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered. *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008).

Parker's claim largely challenges Clayton's credibility. He notes that Clayton did not spend time in prison as a result of her repeated probation violations connected to the case, including an out-of-state trip to Omaha after the shooting, associating with felons, and drug dealing. He also points out that Clayton originally told police one version of events and hid her own drug involvement, only to change her story later. Relying on Clayton's past, he asserts a lack of credible evidence supporting the verdict.

Direct and indirect evidence points to Clayton's credibility. As previously highlighted, tire tracks, Hoffman's bag being found in Parker's truck containing Hoffman's DNA, forensics indicating a Berretta pistol may have been used in the shooting, and other witness testimony substantiated much of Clayton's testimony implicating Parker. Additional trial witnesses supported Clayton's testimony that she tried to find Hoffman a place to stay in Creston and get away from Parker following the shooting. Gonzales and Clayton's friend who drove her to Des Moines in the days before the shooting corroborated Clayton's testimony surrounding the events preceding Hoffman traveling to Creston with the defendant. A gun cleaning kit found in Parker's safe undercut his claims to police that he did not own a gun. Facebook messages following July 21 show that Parker had obtained a significant amount of methamphetamine and was trying to sell it.

This is not the extraordinary case in which evidence preponderates heavily against the verdict. Accordingly, the district court did not abuse its discretion when it found the verdict was not contrary to the weight of the evidence.

**AFFIRMED.**