# IN THE COURT OF APPEALS OF IOWA

No. 21-1040
Filed July 20, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH ALLEN BLOOM,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Gregory G. Milani, Judge.

A defendant appeals his judgment and sentence in connection with a home invasion that resulted in stolen property and serious physical injuries. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by May, P.J., Chicchelly, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**CHICCHELLY, Judge.**

Joseph Allen Bloom appeals his judgment and sentence in connection with a home invasion that resulted in stolen property and serious physical injuries. Bloom challenges the corroboration of accomplice testimony, failure to merge charges, and imposition of a sentencing enhancement. We find one of Bloom's merger claims is correct but affirm his judgment and sentence in all other respects.

## I.     *Background Facts and Proceedings.*

On April 5, 2020, Michael Nulph allowed Alexies Meier to enter his home to retrieve belongings she had left there. Meier disabled Nulph's home security system, apologized to him, and went outside. Two masked men then entered Nulph's home and physically assaulted him. Nulph lost consciousness, suffered a fractured skull, and required reconstructive surgery. His cell phones, keys, and cash were missing after the attack.

Meier testified that she disabled the security system because she was threatened and instructed to do so by her former boyfriend, Anthony Lankford. She recounted being with Lankford and Bloom at Bloom's residence on the day of the attack, then driving Lankford and Bloom to Nulph's house, disabling the security system, and seeing the pair enter Nulph's home wearing masks. Meier stated that she tried unsuccessfully to hotwire the vehicle they arrived in while the two men were inside. Once back in the vehicle with Meier, Lankford and Bloom discussed assaulting Nulph. Meier observed some of Nulph's belongings in their possession. The trio attempted to rent a hotel room on the night of the incident, but none had identification on them. Bloom's paramour, Connie West, ultimately rented the

room for them but did not stay the night. West testified that Bloom used her vehicle on the night in question and that she saw Lankford with Bloom at the hotel.

Before trial, Bloom sent at least one letter to West, addressed to her dog, describing a narrative of events from the night of the assault that conflicted with Meier's and West's testimonies. Specifically, Bloom wrote that he had let "some chick" use West's truck while he was with West that night working on the house until West rented a hotel room. When questioned by an investigating police officer, Bloom stated that he was potentially being set up by Meier. Later, Bloom sent the officer a statement changing his story and indicating that Meier was with Bloom at his residence, asked to borrow the vehicle, and left with two other men—along with Bloom's cell phone that he had left in the vehicle. While in jail, Bloom made phone calls in which he repeated the alibi described in his letter to West's dog. He also made other cryptic communications from jail—via phone calls and text messages—relating to Meier and her intention to testify against him.

After a jury returned a guilty verdict, the court entered judgment against Bloom for burglary in the first degree, robbery in the first degree, assault while participating in a public offense causing serious injury, and willful injury causing serious injury. The court ordered his sentences for burglary and robbery—terms of imprisonment not to exceed twenty-five years—to run consecutive to one another. The court ordered Bloom's sentences for assault and willful injury—terms of imprisonment not to exceed fifteen years—to run concurrently to those for burglary and robbery. Bloom filed a timely appeal.

## II.    Review.

We review challenges to the sufficiency of corroborating evidence for correction of errors at law.  *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997).  "We view all the evidence in the light most favorable to the State, even if contradicted, and indulge in every legitimate inference that may be fairly and reasonably deduced from this evidence."  *Id.*

"We review double jeopardy claims de novo, due to their constitutional nature."  *State v. Lindell*, 828 N.W.2d 1, 4 (Iowa 2013).  We otherwise review sentencing challenges to correct errors at law.  *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015).

## III.    Discussion.

### A. Corroboration of Accomplice Testimony.

Bloom contends there was insufficient evidence to corroborate Meier's testimony.  Meier was the only witness who affirmatively placed Bloom at the scene of the assault on Nulph.  The parties do not challenge that Meier was an accomplice.  A conviction cannot rest upon accomplice testimony without sufficient corroboration.  Iowa R. Crim. P. 2.21(3).  "Evidence asserted as corroborative of an accomplice's testimony will be sufficient to create a jury question if that evidence corroborates some material aspect of the accomplice's testimony tending to connect [the] defendant to the commission of the crime and thereby supports the credibility of the accomplice."  *State v. Brown*, 397 N.W.2d 689, 694–95 (Iowa 1986); *accord State v. Shortridge*, 589 N.W.2d 76, 80 (Iowa Ct. App. 1998) (noting "corroborative evidence need not be strong or confirm every detail of the accomplice's testimony").  "It is firmly grounded in Iowa case law that a small

amount of corroborative evidence is all that is required." *State v. Palmer*, 569 N.W.2d 614, 616 (Iowa Ct. App. 1997).

Here, a variety of evidence corroborates Meier's testimony. First and foremost, West's testimony is consistent with that of Meier and suggests that Bloom's alibi about being home with her was fabricated. "A defendant's false story is in itself an indication of guilt." *State v. Johnson*, No. 07–0307, 2008 WL 1887303, at *4 (Iowa Ct. App. Apr. 30, 2008) (finding accomplice testimony corroborated by the fact that the defendant gave different stories to law enforcement). West's testimony also corroborated that Lankford was at the hotel with Bloom shortly after the incident. *See Palmer*, 569 N.W.2d at 616 (finding independent evidence that a defendant was in the company of other perpetrators close in time to the crime corroborates accomplice testimony). Nulph also testified about being attacked by two men, further corroborating Meier's description of two accomplices, and while Nulph could not say with certainty, he stated at trial that Bloom "looks familiar as one of the guys that night."

Upon review of this cumulative evidence, we find corroboration indeed existed; whether it was sufficient to support Bloom's convictions was a question for the jury. *See Brown*, 397 N.W.2d at 694 ("The existence of corroborative evidence is a question of law; the sufficiency of that evidence ordinarily is a question of fact.").

### B. Double Jeopardy and Merger.

Bloom asserts two claims of illegal sentencing for failure to merge certain convictions as required by the Double Jeopardy Clause of the United States Constitution and state merger statute. The Fifth Amendment to the United States

Constitution, enforced against the states through the Fourteenth Amendment, precludes "multiple punishments for the same offense." *State v. McKettrick*, 480 N.W.2d 52, 56 (Iowa 1992). This protection is codified by Iowa Code section 701.9 (2020), which instructs courts to enter judgment only for the greater offense when a defendant is "convicted of a public offense which is necessarily included in another public offense of which the person is convicted." *See State v. Caquelin*, 702 N.W.2d 510, 511 (Iowa Ct. App. 2005).

To determine what constitutes a "necessarily included" offense, our courts apply a two-step approach. *See State v. Johnson*, 950 N.W.2d 21, 24–25 (Iowa 2020). First, we employ a legal elements test "to determine whether it is possible to commit the greater offense without also committing the lesser offense." *Id.* at 24 (quoting *State v. Halliburton*, 539 N.W.2d 339, 340 (Iowa 1995)). Then the court analyzes "[w]hether the legislature intended multiple punishments for both offenses." *Id.* at 25 (quoting *Halliburton*, 539 N.W.2d at 344).

Bloom's first merger claim is that willful injury causing serious injury was a lesser-included offense and therefore merges with first-degree robbery. The State concedes that merger was required. We agree because the Iowa Supreme Court has affirmatively answered this question. *See State v. Hickman*, 623 N.W.2d 847, 852 (Iowa 2001) (finding willful injury offense must merge with first-degree robbery because the intent of "purposely inflicts . . . a serious injury" is synonymous with "intended to cause . . . serious injury"). Accordingly, we remand with instructions to merge Bloom's conviction for willful injury into his first-degree robbery conviction.

Bloom's second merger claim is that his conviction for assault while participating in a public offense causing serious injury merges with his first-degree convictions for robbery and burglary. He contends that every element of the assault charge is collectively present in the combination of the robbery and burglary charges. Bloom acknowledges that neither robbery nor burglary independently subsume the assault charge. However, merger requires complete overlap between two offenses. *See State v. Mbonyunkiza*, No. 14-1283, 2016 WL 7395720, at *8 (Iowa Ct. App. Dec. 21, 2016) (finding three convictions for one act of wrongdoing to be permissible because each offense could be committed without necessarily committing any one of the others). Two offenses will not merge if "each provision requires proof of an additional fact which the other does not." *McKettrick*, 480 N.W.2d at 57.

Moreover, merger is not required if the legislature intended to authorize multiple punishments. *See Johnson*, 950 N.W.2d at 24 ("The legislature defines the offenses and can provide for multiple punishments for separate offenses that apply to the same conduct."). Here, the intent to impose multiple punishments is clear. *See State v. Perez*, 563 N.W.2d 625, 628 (Iowa 1997) ("On its face, the provision [criminalizing assault while participating in a felony] contemplates punishment for two offenses—the assault resulting in injury as well as the predicate felony."). Accordingly, we find Bloom's second merger claim must fail.

*C. Sentencing Enhancement.*

Bloom argues the district court erred in applying the sentencing enhancement under Iowa Code section 902.11. Section 902.11 is invoked when sentencing a defendant for conviction of a felony if that defendant has a prior

conviction for a forcible felony or a crime of similar gravity. At issue here is whether Bloom's prior conviction for vehicular homicide by reckless driving or by eluding, in violation of Iowa Code section 707.6A(2), constitutes a "crime of similar gravity." This category is undefined and has produced limited case law. However, the Iowa Supreme Court found in *State v. Grimes*, 569 N.W.2d 378, 380 (Iowa 1997), that second-degree burglary, as then defined, does not trigger this statute because the crime "did not involve an element of victim risk." In comparison, "the statutory list of forcible felonies under Iowa Code section 702.11 includes only crimes that involve a risk to persons." *Id.* Vehicular homicide by reckless driving or by eluding necessarily involves a significant degree of victim risk.

Moreover, "[t]he gravity of homicide is unparalleled." *Rivera v. State*, No. 16-1253, 2017 WL 2461563, at *4 (Iowa Ct. App. June 7, 2017) (evaluating a sentencing challenge for conviction of unintentionally causing the death of another by operating a motor vehicle while intoxicated). Bloom contends the lack of specific intent required to convict him of vehicular homicide means that it is not a crime of similar gravity. We do not find this comparison instructive because several forcible felonies do not require specific intent. *See, e.g.*, Iowa Code § 726.6(1)(a) (defining the intent element for child endangerment resulting in death or serious injury—which Iowa Code section 702.11 identifies as a forcible felony—to be when a person "[k]nowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety"). Given the seriousness of vehicular homicide, we find it is a crime of similar gravity to forcible felonies and affirm imposition of the sentencing enhancement.

*IV.*     *Disposition.*

We reject Bloom's challenges to the sufficiency of corroborating evidence, non-merger of his assault conviction, and application of the sentencing enhancement.  However, we remand the case for entry of an order merging his conviction for willful injury causing serious injury with first-degree robbery.  We note resentencing is not required because the sentence for his willful injury conviction was ordered to run concurrently with his conviction for first-degree robbery.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**